492 A.2d 637

**Theodore BRENT**

v.

**STATE of Maryland.**

**No. 1182, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

May 15, 1985.

John L. Kopolow and Jose F. Anderson, Asst. Public Defenders, Baltimore (Alan H. Murrell, Baltimore, Public Defender on the brief), for appellant.

Valerie V. Cloutier, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, Warren B. Duckett, State's

Atty. for Anne Arundel County and Gerald K. Anders, Deputy State's Atty. for Anne Arundel County on the brief, Annapolis), for appellee.

Argued before WEANT, ALPERT and KARWACKI, JJ.

KARWACKI, Judge.

We are here called upon to review the propriety of a trial judge's refusal to recuse himself after learning of a defendant's prior willingness to plead guilty, and having presided at guilty plea proceedings of his co-defendants, at which the trial judge heard statements of facts implicating the defendant.

The appellant, Theodore Brent, was indicted on September 19, 1983 on charges of burglary and felony theft. Following a bench trial on July 10, 1984 in the Circuit Court for Anne Arundel County the appellant was found guilty of both charges. For these convictions the court imposed consecutive sentences of fifteen years for burglary and ten years for theft, suspending all but seven and three years, respectively. Incarceration was to be followed by five years probation, one condition of which was payment of restitution in the amount of $17,500 jointly and severally with one of the appellant's two co-defendants. A three judge panel revised the sentence, imposing concurrent ten year sentences on both counts with all but seven years of each suspended, with restitution in the amount of $20,000 to be paid jointly and severally with the appellant's co-defendants.

The appellant challenges his convictions, contending on appeal that the trial judge erred:

    1. in refusing to recuse himself, and [1]

---

**1.** The State questions preliminarily whether this issue has been properly preserved for appeal. While not citing Md. Rule 4–243(c)(5) specifically, the appellant stated as grounds for his objection to the trial judge's denial of his request for recusal that the judge had knowledge of the intended guilty plea, and was aware of facts impli-

2. in ordering the appellant to pay restitution without inquiry into the appellant's ability to do so.

Since we conclude that the first of these contentions warrants reversal of the judgment below, we shall not consider the second issue presented.

Before the appellant's trial, the Deputy State's Attorney, the appellant's counsel, and the trial judge engaged in lengthy discourse regarding plea discussions which had earlier taken place in the appellant's case. Because the content of this exchange is pertinent to our decision in this case, we here reproduce it in its entirety:

MR. ANDERS [Deputy State's Attorney]: Your Honor, this was scheduled for a trial just—just to a minute or so ago when Mr. Cochran whispered to me that he intended— the Defendant intended to enter a plea in the case along more or less the lines that we discussed earlier. Again, it was to be the same as the case of Robert Lee Lewis. The defendant would indicate his desire to plead guilty to house breaking. This plea would be acceptable to the State.

THE COURT: Daytime?

MR. ANDERS: Yes, sir. This plea would be acceptable to the State. Upon entering the plea to that charge, the State would make no recommendation concerning disposition. Your Honor, we hadn't discussed restitution at all in this case; so I'd like to put that off until I have a chance to talk to Mr. Cochran and handle that at sentencing.

THE COURT: Well, somewhere along the line this money has got to be paid back, so it's going to have to be jointly and severally for the entire balance of the amount of money.

MR. ANDERS: Well, as I say—

---

cating the appellant. We hold that this statement of grounds is sufficient to preserve the issue for appeal.

THE COURT: I mean, this twenty thousand dollars has got to be paid. The victim is not going to go walking—you know, just walk away. So, I mean, I ...

MR. COCHRAN [Defense Counsel]: Well, Your Honor—

MR. ANDERS: Well, I do intend to recommend restitution in this case.

THE COURT: Yeah, okay. But, I mean so far—

MR. ANDERS: I—you know, I—that's fine.

THE COURT: What we have so far is ... Mrs. Bausum is paying twenty-five hundred dollars. That leaves seventeen five.

MR. ANDERS: Your Honor, the amount is approximate. I should indicate that. The victim is not—is not absolutely sure of the exact amount—

THE COURT: Well, all I'm saying is that when I sentence it's goi—everybody is going—it's going to equal so that the victim gets back fif—twenty—whatever the loss was.

MR. COCHRAN: Your Honor—

MR. ANDERS: Your Honor, another defendant has already plead guilty and has been sentenced in another case before Judge—

THE COURT: And what happened in that case?

MR. ANDERS: —Heise. And restitution was ordered for his involvement. I believe that was approximately five thousand, I think.

THE COURT: Well, okay.

MR. COCHRAN: Your Honor, out of curiosity, the—the last—the last defendant was ordered to pay twenty-five hundred. Does that mean that my guy is going to be ordered to pay seventeen fifty?

THE COURT: I don't know. I can only tell you that was a plea bargain with the State. I accepted it as a binding agreement. All I'm telling you if it's not—if it's not—if it's not a binding—if it is not a binding agreement and you don't have an agreement we'll try the case. That's the—

MR. ANDERS: Well, Your Honor—

THE COURT: —only thing I can—

MR. ANDERS: —the only thing we don't have an agreement as to is restitution. And if there's any dispute as to that at the time of sent—

THE COURT: Well, I don't want to come back later and say well now one person paid twenty-five hundred dollars, and I only owe twenty-five hundred dollars like the other party—

MR. ANDERS: No, Your Honor. We can have a hearing on restitution. I mean, if that—the issue here is—

THE COURT: Well, I mean, I think Mr. Cochran is a little bit concerned about it. And I think we ought to get that clearly understood ahead of time instead of—I don't want to lead—I don't want this gentleman to come in and say well wait a minute now, I don't want to go along with the arrangement. I want to make sure that the victim is made whole.

MR. COCHRAN: Your Honor, um, I—I'm in a situation where I would ask that the matter be rescheduled before another judge for trial because I—my man—

THE COURT: Well, I'm going to deny that motion.

MR. COCHRAN: Sir?

THE COURT: I'm going to deny that motion.

MR. COCHRAN: Well, Your Honor, the reason being that you've just heard the Statement of Facts as related to another thing. I will ask for a judge trial. And I would ask that another judge be able to try it.

THE COURT: I'm going to deny your motion.

MR. COCHRAN: Your Honor, I think—

THE COURT: We don't go judge shopping here. I'm not going to do that.

MR. COCHRAN: Wait a minute, Judge.

THE COURT: Just simply because I heard the facts in another case doesn't disqualify me from hearing this case.

MR. COCHRAN: Well, okay. I'll have—

THE COURT: I mean, he may tot—he may be innocent.

MR. COCHRAN: Very well. Not only—okay, Your Honor. I will ask for a trial right now. I'd also ask you to disqualify yourself for the purpose—and I'm not judge shopping. I am not judge shopping at all, Your Honor. You have just heard facts related to this case in two pleas right before you; and, uh, I think that those will bear— you've all—you've already heard statements implicating my man. And I don't see how you could possibly have a free and clear mind.

THE COURT: All right. And your position?

MR. ANDERS: Well, Your Honor, I certainly think the Court is—is—can place out of its mind any facts it may have heard in another case. We've been waiting here all day to have this case heard. And Your Honor's the first judge that's become available. And I don't think there's anyone else that can hear the case. And I would object to have the case removed.

THE COURT: I'm going to deny your motion.

MR. COCHRAN: Okay. But just—just so the record is—

THE COURT: This Court is not—this Court is not prejudiced against this defendant. He may very well be innocent. Just because two other people said that he did it doesn't, you know, in a plea agreement doesn't mean anything. It doesn't to me anyhow.

MR. COCHRAN: Thank you, Judge. I have a not guilty election of trial with Court specified by the defendant.

The gravamen of the appellant's complaint below and here is that the trial judge was unable to render an impartial verdict once he had knowledge of the appellant's willingness to plead guilty, and had heard facts indicative of the appellant's guilt. In support of this assertion the appellant relies upon Md. Rule 4–243(c)(5) which requires a trial judge, upon objection, to recuse himself from a bench trial if he has heard a plea agreement from which the defendant subsequently withdraws. That section provides:

If the defendant withdraws the plea and pleads not guilty, then upon the objection of the defendant or the State made at that time, the judge to whom the agreement was presented may not preside at a subsequent court trial of the defendant on any charges involved in the rejected plea agreement.

We agree with the State that, narrowly read, the rule applies only to those situations in which a formal plea agreement has been presented to the trial judge, and is then later withdrawn by the defendant. In the matter we here consider it is undisputed that no such agreement was tendered to the trial judge. Nevertheless, the appellant would have us extend the application of § 4–243(c)(5) to his case since, he argues, "the situation presented in the case at bar is in no material way different from a situation requiring recusal under 4–243." In determining whether the rule does apply to matters like the case *sub judice*, we look to the substantive protections and policies that undergird the rule.

The Supreme Court has given its imprimatur to the plea bargaining process, as an "essential component of the administration of justice." *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); *see also State v. Brockman*, 277 Md. 687, 693, 357 A.2d 376 (1976). The Supreme Court has recognized, however, that "this phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." *Santobello v. New York*, 404 U.S. at 262, 92 S.Ct. at 499.

The call for such safeguards has given rise to case law, statutes and court rules governing the plea bargaining process. The general standard for accepting a guilty plea is set forth in Fed.R.Crim.P. 11. Section (e) of that rule outlines the procedure for the making of plea agreements. The comparable Maryland rules are Rule 4–242 [formerly Rule 731], which governs pleas, generally, and Rule 4–243

[formerly Rule 733] which addresses the plea bargaining process. These Maryland rules substantially track Fed.R. Crim.P. 11. The Court of Appeals, however, has gone a step further in adopting subsection (c)(5), which addresses the defendant's right to be tried by a judge who has not heard his withdrawn guilty plea. The federal rule contains no such provision. While we find no Maryland case which has specifically articulated the policy which inspired the promulgation of subsection (c)(5), we believe it reasonable to interpret that policy as an exposition of the notions of "fair play and equity," which the Court of Appeals has said must govern the plea bargaining process generally. *State v. Brockman, supra,* 277 Md. at 697, 357 A.2d 376. This Court as well has noted that Rule 4-243 is but a "vehicle for the implementation of basic due process rights." *In re James B.,* 54 Md.App. 270, 276-77 n. 3, 458 A.2d 847 (1983). A defendant's entitlement to "fair play and equity" and "basic due process" mandates that, notwithstanding an unsuccessful attempt to secure a plea agreement, he should nonetheless receive an impartial trial on the merits of his case.[2] Subsection (c)(5) is designed to protect the defendant from the possibility that he may receive a less than scrupulously fair trial if tried by the same judge who has already reviewed his proposed agreement with the State to plead guilty. This rule effectively acknowledges that once a judge has heard highly prejudicial proffers of the defendant's proposed guilty plea and the facts which support it, it is difficult for him or her to then render an impartial decision on the merits of the case at a bench trial.

We note that in *Commonwealth v. Walls,* 261 Pa.Super. 321, 325-26 n. 2, 396 A.2d 419, 421 (1978), the Pennsylvania Superior Court reiterated the rule of law in that State with

---

**2.** As a general rule, the trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case, or whenever he believes his impartiality can reasonably be questioned. ABA Standards Relating to Function of the Trial Judge, Standard 6-1.7; Code of Judicial Conduct Canon 3(C)(1). Compare, Md. Rule 1231.

regard to the recusal of a trial judge who learns of a defendant's withdrawn guilty plea:

> In a case where the judge hears highly prejudicial testimony, such as a withdrawn guilty plea, he should recuse himself from sitting as fact finder or declare a mistrial if the testimony is brought to his attention in the course of the trial.

Cited in support of this statement of the law were *Commonwealth v. Badger*, 482 Pa. 240, 393 A.2d 642 (1978) and *Commonwealth v. Conti*, 236 Pa.Super. 488, 345 A.2d 238 (1975). In *Badger, supra,* the Pennsylvania Supreme Court found that defense counsel's failure to request recusal of a judge who had heard a statement of facts pursuant to the defendant's aborted attempt to plead guilty amounted to ineffective representation warranting a new trial. In so holding the Court said, "the alternative of having a judge, who was not aware of the plea, try the case would have offered a 'potential for success substantially greater than' [to be tried by a judge who knew of the plea]." *Id.*, 482 Pa. at 244, 393 A.2d at 644. Similarly, in *Conti, supra,* the Superior Court held that a trial judge who learned during trial of the defendant's plea of guilty at a preliminary hearing when unrepresented by counsel, erred in failing to recuse himself. The Court noted that "[t]here are times when evidence is so prejudicial that we cannot assume the trier of fact will be able to put the evidence aside and arrive at an impartial adjudication." *Id.*, 236 Pa. at 495, 345 A.2d at 242. The Pennsylvania Court further reasoned that "in some instances due process requires that we not simply rely on the fiction of a judicial blindside." *Id.* at 501, 345 A.2d at 245. *See also Commonwealth v. Simmons*, 483 A.2d 953 (1984).

Similar to the Pennsylvania decisions discussed above, Rule 4–243(c)(5) reflects the recognition by our Court of Appeals that, despite the presumption that "judges are men of discernment, learned and experienced in the law and capable of evaluating the materiality of evidence," *State v. Babb*, 258 Md. 547, 550, 267 A.2d 190 (1970), there none-

theless do exist those times when, to protect the defendant's and the public's right to a fair trial, and to ensure that the trial judge's impartiality cannot reasonably be questioned, the judge must remove himself from sitting as the trier of fact in the defendant's criminal trial. Cognizant of the policies of fair play, equity and basic due process which underlie the rule, we now turn to our determination of whether that rule should be made applicable to the circumstances of the instant case.

Helpful to us in that determination is the recent decision of the Court of Appeals in *Sutton v. State*, 289 Md. 359, 424 A.2d 755 (1981). In that case, the Court of Appeals was presented with the question of whether the requirements of then Rule 731(c), which addresses the taking of a guilty plea, should be made applicable to the defendant's plea of not guilty on an agreed statement of facts. The Court held that because the defendant's plea of not guilty was entered at the trial court's direction under a prearrangement for trial on an agreed statement of facts, and the defendant was aware that she would be found guilty and placed on probation, she was entitled to the same protections accorded to a defendant who pleads guilty. In so holding, the Court said:

Trying a case on an agreed statement of facts ordinarily does not convert a not guilty plea into a guilty plea. *See Covington v. State*, 282 Md. 540, 542, 386 A.2d 336, 337 (1978); *Stevenson v. State*, 37 Md.App. 635, 636, 378 A.2d 209, 210 (1977). But here the totality of the circumstances, and in particular, the facts that the petitioner's plea was entered at the direction of the trial court and that she was aware that she would be placed on probation, shows that the proceeding was not in any sense a trial and offered no reasonable chance that there would be an acquittal. Under these particular circumstances, the petitioner's plea was the functional equivalent of a guilty plea. As the Supreme Court stated in *McCarthy* [*v. United States*, 394 U.S. 459, 472 (1969)], 89 S.Ct. at 1174 [22 L.Ed.2d 418]:

"It is, therefore, not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and to determine whether they understand the action they are taking."

Accordingly, we now hold that under circumstances such as these, the requirements of Rule 731 c are applicable. Under these limited circumstances, there must be an affirmative showing on the record that the trial court determined that "the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea.[3]

*Id.* at 366–67, 424 A.2d 755.

■ We believe the nature and purpose of former Rule 731(c) is comparable to that of the rule we here consider; that is, both rules are designed to ensure that the defendant is accorded the rights and safeguards which should attend guilty plea proceedings. Therefore, as did the Court of Appeals in *Sutton,* we must question whether under the "totality of the circumstances" the judge was presented with the "functional equivalent" of a formal plea agreement. We answer that question in the affirmative. Here, the judge was apprised by the Deputy State's Attorney that the appellant intended to plead guilty to one count of daytime housebreaking, that the intended plea would be acceptable to the State, that the State would make no recommendation as to sentencing, and that the State would request restitution of an amount to be determined at a hearing to be conducted at a later time. Furthermore, the

---

**3.** Then rule 731 c now adopted as rule 4–242(c) provided:

The court may not accept a plea of guilty without first questioning the defendant on the record to determine that the plea is made voluntarily, with understanding of the nature of the charge and the consequences of the plea. The court may accept the plea of guilty even though the defendant does not admit that he is in fact guilty if the court is satisfied that there is a factual basis for the plea. If the court refuses to accept a plea of guilty, the court shall enter a plea of not guilty.

trial court knew of facts indicative of the appellant's guilt which had been revealed at the taking of a guilty plea by one of the appellant's co-defendants. We see no material distinction between the highly prejudicial information heard by the trial court in this case and that presented to a court during the formal tender of a plea agreement. Indeed, the trial court here could have learned nothing more had the appellant carried out his original intention to proffer a plea of guilty. We conclude therefore that the totality of the circumstances bring the appellant's case within the spirit if not the letter of Rule 4–243(c)(5). For that reason we hold that the trial judge erred in refusing to grant the appellant's request that he recuse himself from presiding over the appellant's bench trial.

We reverse the judgment of the Circuit Court for Anne Arundel County and remand the case to that court with the direction that the appellant be given a new trial before a judge of that court other than the presiding judge at his first trial. Md. Rule 4–243(c)(5); *Kisamore v. State*, 286 Md. 654, 664–665, 409 A.2d 719 (1980).

JUDGMENT REVERSED:

CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR NEW TRIAL.

COSTS TO BE PAID BY ANNE ARUNDEL COUNTY.