990 A.2d 614

**Vernon DeLano ADDISON**

v.

**STATE of Maryland.**

**No. 2533 Sept.Term, 2008.**

Court of Special Appeals of Maryland.

March 2, 2010.

160

Megan E. Green (Marcus Bonsib, LLC, on brief), Greenbelt, MD, for Appellant.

Susannah E. Prucka (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: SALMON,* ZARNOCH and IRMA S. RAKER (Retired, Specially Assigned), JJ.

ZARNOCH, Judge.

After a bench trial, the Circuit Court for Prince George's County convicted Vernon Delano Addison, appellant, of second degree assault of his then-girlfriend, Simone Coleman. In this appeal, Addison argues that (1) the trial judge erred when he failed, *sua sponte*, to recuse himself from presiding over appellant's bench trial after initially accepting a guilty plea that appellant later withdrew; (2) the court erred when it

---

* James P. Salmon, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a specially assigned member of this Court.

ordered appellant to pay restitution to the victim for her pain and suffering; and (3) the amount of the restitution order was not supported by "competent evidence," as required by Maryland Code (2001, 2008 Repl.Vol.), § 11–603(b) of the Criminal Procedure Article ("CP"). We shall hold that the trial judge did not err when he failed, *sua sponte,* to recuse himself from appellant's trial, and we shall affirm the conviction. The State concedes that the restitution order for pain and suffering was an illegal sentence, and we agree. We therefore shall vacate appellant's sentence and remand to the trial court for re-sentencing.

## FACTS AND LEGAL PROCEEDINGS

On the morning of October 18, 2007, an argument between appellant and Coleman resulted in a physical altercation at Coleman's apartment. During the incident, Coleman's leg was fractured. She later testified that appellant grabbed her and threw her across the room. Coleman stated she "heard [her] leg snap, and the way that it was bent and I couldn't move it, so I knew at that point . . . it must be broken." According to the victim, while she was prone on the living room floor, appellant ran out the door. The police were called, and Coleman was transported by ambulance to a hospital and treated. She underwent follow-up treatment and missed time from work. Appellant denied throwing Coleman across the room. Nevertheless, on April 22, 2008, a grand jury in Prince George's County indicted him on charges of first degree and second degree assault. A trial was scheduled for August 27, 2008.

At the outset of the trial, appellant's counsel and the prosecutor informed the judge that they had negotiated the following: the State would amend count two—second degree assault—to reckless endangerment, appellant would plead guilty to that charge, and the State would not recommend that he serve any jail time.[1] The parties agreed that appellant

---

1. The parties did not inform the court of the purported disposition of the first degree assault count, but apparently, under the agreement, the State was not going to prosecute that charge.

would be sentenced to probation on the conditions that he would (1) have no contact with the victim; (2) complete an anger management course; and (3) pay restitution to the victim in the amount of $725. The court orally granted the State's motion to amend the second count to reckless endangerment.

The judge then began to accept appellant's guilty plea, at which time the following exchange occurred:

THE COURT: Your lawyer says that you want to plead guilty on count 2, which is reckless endangerment. Is that what you wish to do?

[APPELLANT]: Yes, Your Honor.

THE COURT: You were kind of verbally saying yes, sir, but nonverbally saying I'm not sure. So I have to be sure that—and I'm going to ask you a whole bunch of questions to make sure that this is really what you want to do, that you know it's final, that you can't change your mind later, and that there are certain legal consequences of doing it. Okay?

The judge continued his queries: "You've had a full opportunity to discuss this case with your lawyer?" Appellant answered, "No, I haven't. I would like to discuss it a lot more—a little more." The transcript indicates that appellant then consulted with his attorney. Then, the following exchange took place:

THE COURT: You understand that this—once you do this and I find you guilty, that you'll have a criminal record. Do you understand that?

[APPELLANT]: No, I didn't understand that part.

THE COURT: Well, once you plead guilty, I find you guilty and I sentence you, you'll have a criminal record that will be part of the CJIS record database in the United States. Do you understand that?

[APPELLANT]: No, I didn't understand that. I was told I wouldn't have a record.

Both counsel then approached the bench, and the following occurred:

[DEFENSE COUNSEL]: Madam State and myself had discussions about the possibility of a probation before judgment and what her position would be at my request. Madam State and I agreed that should he do everything that the State is requesting, the three things, that upon my request down the road, they would stay silent. I don't know if you were aware that that was part of our agreement.

THE COURT: No.

[PROSECUTOR]: No, it wasn't said.

THE COURT: No, it wasn't stated. But I'm not bound by that. So the point is he may have a criminal record if I don't do that.

[DEFENSE COUNSEL]: Right. When I discussed this with him, I think that he got confused with that being guaranteed. So I need to clarify.

THE COURT: All right. Go ahead and have a further discussion with him.

[DEFENSE COUNSEL]: Thank you.

(Counsel returned to trial tables and the following ensued.)

\* \* \*

[DEFENSE COUNSEL]: Your Honor, at this time I don't think that I nor you will be satisfied with the free and voluntary plea. At this time we have to withdraw the plea.

THE COURT: We ready for trial?

[PROSECUTOR]: We're ready for trial, Your Honor. Preliminarily, we have to ask that [the] motion to amend be stricken, because I amended the count 2 to reckless endangerment with the knowledge that—

THE COURT: The motion to amend is stricken.

[PROSECUTOR]: Thank you.

THE COURT: Since that was a condition of the plea that now can't be taken.

\* \* \*

THE COURT: Counsel, we're ready to proceed with a nonjury trial, correct?

[DEFENSE COUNSEL]: We are ready to proceed. We waive our right to a jury trial.

[APPELLANT]: I'd like to have a jury.

THE COURT: You want a jury?

[DEFENSE COUNSEL]: He's requesting a jury trial, Your Honor.

THE COURT: All right. See if there's a jury available.

[APPELLANT]: Okay, no jury. That's okay.

THE COURT: No jury. Okay. Got to make up your mind Mr. Addison because this is [the] final day. We can't be changing our minds.

[APPELLANT]: Yes, okay.

THE COURT: So now you just told your lawyer to tell me and you indicated to me that you wanted a Court trial, not a jury trial. We have a jury across the hallway. We can bring folks in here and select a jury and you can partici- pate in that process and you can help select 12 jurors, and those 12 jurors have to be convinced of your guilt beyond a reasonable doubt and they all have to be unanimous. That's the right that you're giving up.

The alternative is for you to let me hear the evidence and I have to be convinced of your guilt beyond a reasonable doubt. Do you want to waive and give up your right to a jury trial?

[APPELLANT]: Yes, sir.

THE COURT: Has anybody promised you anything to get you to do that?

[APPELLANT]: No, sir.

THE COURT: Anybody threatened you to get you to do that?

[APPELLANT]: No.

THE COURT: You're doing that because that's what you really want to do?

[APPELLANT]: Yes.

THE COURT: The docket will reflect that the defendant has knowingly and intelligently waived his right to a jury trial and freely and voluntarily elected to be tried by the Court. . . .

At trial, appellant testified and denied throwing Coleman across the floor. At the conclusion of the evidence, the court found appellant guilty of second degree assault, but not guilty of first degree assault.

On December 12, 2008, the court held a sentencing hearing, at which the same judge presided. The State asked the court to sentence appellant to five years' incarceration, with all but thirty days suspended, and order appellant to have no contact with the victim. The prosecutor also requested that the court sentence appellant to supervised probation on the condition that he pay $725 restitution to the victim, and explained, "That's what the insurance didn't cover and there's many other financial burdens, out of loss to work—wages from work and emotional damage that Ms. Coleman has gone through, but obviously that's a civil remedy, not criminal. The $725 accounts for medical bills that were not covered by insurance."

Appellant then said to the judge, "That day, like I admitted before, I never touched her. My mother raised me to never ever put my hands on a woman. And that's what I did. . . ." The judge responded, "See, that's the difficulty you're having. You're standing there saying I'm not guilty . . . of this." The discussion continued, and the judge said that appellant seemed more concerned about being emotionally wounded by the breakup of his relationship with Coleman and having been found guilty of assault [2] than the physical injury he inflicted on his former girlfriend. The judge also reprimanded appellant

---

2. Appellant had no prior criminal record and was concerned that a conviction would jeopardize his longstanding employment at a federal agency.

for failing to accept responsibility or show remorse for his actions.

The judge deliberated about appellant's sentence, and said:

THE COURT: Well, the responsibility of the court is two[-]fold. It's to restore individuals who have been damaged by wrongful conduct and it's to punish them for their wrongful conduct. Unless everybody thinks punishment is by virtue of loss of liberty, but that's not the only way punishment occurs. So my inclination is to just sentence you to five years. Suspend all but two years which is the top of the guidelines, because you don't have any remorse. You don't have any acceptance of responsibility. That's my inclination.

\* \* \*

But I don't see where that does—leaves us with any value as a community. I just don't. Even the State's recommendation is a good recommendation. Thirty days for some punishment, but what I'm going to do is I'm going to sentence you to the jurisdiction of the Department of Corrections. What's the maximum sentence here?

[PROSECUTOR]: Ten.

THE COURT: Ten years. I'm going to suspend it all on the condition that you pay restitution to this victim of $10,000 for the pain and suffering and the expenses that she's sustained as a result of this. . . .

The judge ordered appellant to pay the restitution through the Division of Parole and Probation "on such terms and conditions as [it] determines after a financial review." The judge also sentenced appellant to supervised probation for five years. Additionally, he ordered Addison to complete an anger management program and 200 hours of community service, pay the court costs, and have no contact with the victim. Finally, the judge warned appellant:

You violate any condition of probation, that means you didn't make one payment that's required for the restitution. You miss one community service day, you don't do anything that your Parole and Probation asks you to do, violate your

probation and I'm going to impose the sentence, do you understand that?

On January 6, 2009, appellant timely noted an appeal. On November 20, 2009, appellant filed a "Consent Motion To Stay The Circuit Court's Order To Pay Restitution," and this Court granted the motion on November 25, 2009.[3]

## QUESTIONS PRESENTED

We have rephrased and re-ordered appellant's questions, as follows:[4]

I. Whether (a) the trial judge erred when he failed, *sua sponte*, to recuse himself from presiding over appellant's bench trial after appellant initially entered a guilty plea in front of the judge and then withdrew that plea; and (b) appellant's counsel was ineffective when he failed to request that the trial judge recuse himself.

II. Whether the court erred when it suspended appellant's jail sentence and sentenced him to probation on the condi-

---

**3.** In the motion, appellant's counsel stated that on September 24, 2009, she filed a "Motion to Suspend Restitution Payments" in the Circuit Court for Prince George's County. On October 23, 2009, the court denied the motion. In November, after receiving the State's brief, in which it conceded that the restitution portion of the sentence was error, appellant moved this court to stay the circuit court's order while this appeal was pending. Appellant's counsel stated that the Office of the Attorney General did not oppose this request.

**4.** Appellant presented the following questions verbatim:
  I. Whether a restitution order that is imposed for pain and suffering is unlawful and therefore constitutes an illegal sentence?
  II. Whether a restitution order that is not supported by competent evidence and that is not proven by a preponderance of the evidence is an illegal sentence?
  III. Whether the trial judge committed reversible error when he failed to recuse himself from presiding over the court trial after previously presiding over appellant's guilty plea that was withdrawn, and alternatively, whether defense counsel was ineffective for failing to request the trial judge to recuse himself?
  We address question I in section II of this opinion. Since question II was not raised to the circuit court and we vacate appellant's sentence based on question I, we need not address question II. *See infra* section II.

tion that he pay restitution to the victim for her pain and suffering.

## DISCUSSION

### I. Recusal

#### A. *Sua Sponte* Recusal Under Rule 4–243

█ Maryland Rule 4–243(c)(5) provides:

If the defendant withdraws the [guilty] plea and pleads not guilty, then *upon the objection of the defendant or the State made at that time,* the judge to whom the agreement was presented may not preside at a subsequent court trial of the defendant on any charges involved in the rejected plea agreement.

(Emphasis added).

In this case, neither appellant nor the State objected to the judge presiding at the trial. After appellant withdrew his guilty plea, he and his counsel discussed with the court whether he desired a jury trial, and appellant eventually waived his right to a jury trial. During these discussions, neither appellant nor his counsel objected to the judge presiding at the bench trial or requested that the judge recuse himself. Rule 4–243(c)(5) imposes no requirement that the trial judge *sua sponte* recuse himself in such a situation.

Notwithstanding the express language of the rule, appellant relies on *Brent v. State,* 63 Md.App. 197, 492 A.2d 637 (1985), and several Pennsylvania cases discussed therein, to argue that appellant's rights to due process and a fair trial compelled the judge to recuse himself even though it was never requested. In *Brent,* before the appellant was tried on charges of burglary and felony theft, the trial judge presided over the guilty plea proceedings of the appellant's co-defendants. *Id.* at 198, 492 A.2d 637. Then, "before the appellant's trial, the Deputy State's Attorney, the appellant's counsel, and the trial judge engaged in lengthy discourse regarding plea discussions which had earlier taken place in the appellant's case." *Id.* at 199, 492 A.2d 637. At that time, the prosecutor mentioned

that he had not discussed with defense counsel the issue of appellant paying restitution to the victim. *Id.* The judge remarked, "Well, somewhere along the line this money has got to be paid back, so it's going to have to be jointly and severally for the entire balance of the amount of [stolen] money." *Id.* The judge then spoke with counsel about the amount that had been stolen from the victim and the amounts of restitution that the co-defendants had been ordered to pay as part of their sentences. *Id.* at 200, 492 A.2d 637.

Towards the end of the discussion, defense counsel asked the court to reschedule the matter for trial before another judge. *Id.* at 201, 492 A.2d 637. The judge denied the motion. *Id.* Defense counsel persisted, arguing that the judge had "just heard the Statement of Facts as related to another thing. I will ask for a judge trial. And I would ask that another judge be able to try it." *Id.* The judge again denied the motion, stating, "We don't go judge shopping here. . . . Just simply because I heard the facts in another case doesn't disqualify me from hearing this case." *Id.* Defense counsel again asserted:

> Your Honor. I will ask for a trial right now. I'd also ask you to disqualify yourself for the purpose—and I'm not judge shopping. I am not judge shopping at all, Your Honor. You have just heard facts related to this case in two pleas right before you; and, uh, I think that those will bear—you've all—you've already heard statements implicating my man. And I don't see how you could possibly have a free and clear mind.

*Id.* at 202, 492 A.2d 637. The judge again denied the motion, and replied, "This Court is not . . . prejudiced against this defendant. He may very well be innocent. Just because two other people said that he did it doesn't, you know, in a plea agreement doesn't mean anything. It doesn't to me anyhow." *Id.*

This Court recognized that, "narrowly read, [Rule 4–243(c)(5)] applies only to those situations in which a formal plea agreement has been presented to the trial judge, and is

later withdrawn by the defendant," and noted that the *Brent* plea arrangement had merely been discussed and no formal plea agreement had been presented to the judge. *Id.* at 203, 492 A.2d 637. Nevertheless, this Court examined the "substantive protections and policies that undergird the rule," *id.,* and wrote:

> While we find no Maryland case which has specifically articulated the policy which inspired the promulgation of subsection (c)(5), we believe it reasonable to interpret that policy as an exposition of the notions of "fair play and equity," which the Court of Appeals has said must govern the plea bargaining process generally. This Court as well has noted that Rule 4–243 is but a "vehicle for the implementation of basic due process rights." A defendant's entitlement to "fair play and equity" and "basic due process" mandates that, notwithstanding an unsuccessful attempt to secure a plea agreement, he should nonetheless receive an impartial trial on the merits of his case. Subsection (c)(5) is designed to protect the defendant from the possibility that he may receive a less than scrupulously fair trial if tried by the same judge who has already reviewed his proposed agreement with the State to plead guilty. This rule effectively acknowledges that once a judge has heard highly prejudicial proffers of the defendant's proposed guilty plea and the facts which support it, it is difficult for him or her to then render an impartial decision on the merits of the case at a bench trial.

*Id.* at 204, 492 A.2d 637 (citations omitted).

This Court then examined decisions of Pennsylvania appellate courts on this issue, and quoted from *Commonwealth v. Walls,* 261 Pa.Super. 321, 396 A.2d 419, 421 n. 2 (1978), where the Pennsylvania Superior Court wrote in a footnote: "In a case where the judge hears highly prejudicial testimony, such as a withdrawn guilty plea, he should recuse himself from sitting as fact finder or declare a mistrial if the testimony is brought to his attention in the course of the trial." In support of that statement, *Walls* cited two Pennsylvania cases.

In *Commonwealth v. Conti*, 236 Pa.Super. 488, 345 A.2d 238, 241 (1975), during the appellant's trial, a witness testified that the appellant had initially pled guilty at a preliminary hearing. Defense counsel immediately objected, moved for a mistrial, and requested that the case be assigned to another judge. *Id.* at 241–42. The trial judge sustained the objection, but denied the motion for a mistrial and the request to assign the case to a different judge. *Id.* The appellate court held that the judge erred because the evidence of the appellant's guilt was not overwhelming and the testimony about his initial guilty plea "was inherently highly prejudicial for it indicated that appellant was lying either at the preliminary hearing or at trial." *Id.* at 245.

In *Commonwealth v. Badger*, 482 Pa. 240, 393 A.2d 642 (1978), *overruled on other grounds by Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 976 (1987), the Pennsylvania Supreme Court held that defense counsel's failure to request recusal of a judge who had heard a statement of facts pursuant to the defendant's aborted attempt to plead guilty amounted to ineffective representation warranting a new trial.

After examining those cases, this Court stated:

> Similar to the Pennsylvania decisions discussed above, Rule 4–243(c)(5) reflects the recognition by our Court of Appeals that, despite the presumption that "judges are men of discernment, learned and experienced in the law and capable of evaluating the materiality of evidence," there nonetheless do exist those times when, to protect the defendant's and the public's right to a fair trial, and to ensure that the trial judge's impartiality cannot reasonably be questioned, the judge must remove himself from sitting as the trier of fact in the defendant's criminal trial.

*Brent*, 63 Md.App. at 205–06, 492 A.2d 637 (citation omitted).

Appellant argues that *Brent* and the Pennsylvania decisions demonstrate that the trial judge in this case was required to *sua sponte* recuse himself from appellant's trial. His reliance on *Brent, Conti*, and *Badger* is misplaced. Defense counsel in *Brent* and *Conti* expressly objected to the judge presiding, as

contemplated by Rule 4–243(c)(5). *Brent,* 63 Md.App. at 201–02, 492 A.2d 637; *Conti,* 345 A.2d at 241–42. In this case, no one requested that the trial judge recuse himself or even mentioned any concerns about the judge presiding. In *Badger,* the court held that defense counsel's failure to request the judge's recusal amounted to ineffective assistance of counsel, but did not address whether the judge erred when he failed to recuse himself absent a party's objection or motion. 393 A.2d at 644.

Furthermore, while in *Brent* the judge was aware of the underlying facts of the case because he had presided over co-defendants' guilty pleas and discussed specific facts of the case with the appellant's counsel and the prosecutor prior to presiding at the trial, in this case, the record does not reveal that the judge was informed of any facts before the trial relating to appellant's withdrawn guilty plea. Appellant asserts that "the trial court was unable to render an impartial verdict" because the judge was aware that appellant came to trial intending to plead guilty to reckless endangerment and listened to the prosecutor recommend certain conditions of probation. The record, however, does not indicate that the judge was informed of the conduct or facts that precipitated the State's prosecution of appellant or its recommendation. These circumstances are quite different than *Brent.*

Appellant relies on the footnoted language of the Pennsylvania Superior Court in *Walls,* 396 A.2d at 421 n. 2, that we quoted in *Brent,* 63 Md.App. at 204–05, 492 A.2d 637, that, "[i]n a case where the judge hears highly prejudicial testimony, such as a withdrawn guilty plea, he should recuse himself from sitting as fact finder or declare a mistrial if the testimony is brought to his attention in the course of the trial." At oral argument, appellant's counsel also relied on our statement in *Brent,* 63 Md.App. at 204, 492 A.2d 637, that Rule 4–243 is predicated on a defendant's due process rights to a fair trial. She further asserted that the court erred when it failed to inform appellant that he had the opportunity to request that the judge recuse himself. In *Brent,* we did not intend to read

out the plain language of the rule conditioning the recusal requirement on a party's objection. Indeed, our holding in *Brent* explicitly stated that "the trial judge *erred in refusing to grant the appellant's request* that he recuse himself from presiding over the appellant's bench trial." *Id.* at 208, 492 A.2d 637 (emphasis added). Likewise, the rule imposes no responsibility on the judge to inform the defendant of his right to request a recusal.[5]

Appellant also claims that the judge could not possibly remain impartial in this case after originally hearing that appellant intended to plead guilty to reckless endangerment. Appellant cites *Scott v. State*, 110 Md.App. 464, 486, 677 A.2d 1078 (1996) (citing *Jefferson–El v. State*, 330 Md. 99, 105–08, 622 A.2d 737 (1993)), where we stated that an accused has the right to a trial in which the judge is (1) impartial and disinterested, and (2) has the appearance of being impartial and disinterested. Appellant, however, does not mention, and we have not noticed, one instance during the trial where the judge exhibited any bias in favor of appellant's guilt. For these reasons, we hold that Rule 4–243 requires recusal only upon the objection or request of a party, and we find no authority that requires us to hold otherwise.

## B. Ineffective Assistance of Counsel

■ The Court of Appeals has repeatedly stated that the "desirable procedure" for presenting claims of ineffective assistance of counsel is through post-conviction proceedings. *Johnson v. State*, 292 Md. 405, 434, 439 A.2d 542 (1982) (citation and internal quotations omitted); *see also, e.g., Ware*

---

5. We also note that the *Walls* footnote is dicta. *Walls* considered whether a trial judge erred when he refused to declare a mistrial but sustained an objection to a prosecutor's question to a defendant about an inadmissible statement that the defendant made to the police. 396 A.2d at 420–21. Moreover, *Walls* cited *Badger* and *Conti* in support of its statement, and, as we noted, those cases did not hold that a trial judge is required to *sua sponte* recuse himself after hearing evidence of a withdrawn guilty plea.

*v. State,* 360 Md. 650, 706, 759 A.2d 764 (2000). In *Johnson,* the Court of Appeals explained:

> In essence, it is because the trial record does not ordinarily illuminate the basis for the challenged acts or omissions of counsel, that a claim of ineffective assistance is more appropriately made in a post conviction proceeding[.] Moreover, under the settled rules of appellate procedure, a claim of ineffective assistance of counsel not presented to the trial court generally is not an issue which will be reviewed initially on direct appeal, although competency of counsel may be raised for the first time at a[ ] post conviction proceeding. Upon such a collateral attack, there is presented an opportunity for taking testimony, receiving evidence, and making factual findings concerning the allegations of counsel's incompetence. By having counsel testify and describe his or her reasons for acting or failing to act in the manner complained of, the post conviction court is better able to determine intelligently whether the attorney's actions met the applicable standard of competence. Where, as here, the record sheds no light on why counsel acted as he did, direct review by this Court would primarily involve the perilous process of second-guessing, perhaps resulting in an unnecessary reversal in a case where sound but unapparent reasons existed for counsel's actions.

*Id.* at 435, 439 A.2d 542 (citations and quotations omitted).

Here, the record does not provide any clues why appellant's trial counsel did not request that the judge recuse himself. As in *Johnson,* addressing this issue "would primarily involve the perilous process of second-guessing." We, therefore, decline to address appellant's contention of ineffective assistance of counsel in this appeal.

## II. Restitution Order

■ Appellant contends that the court erred when it suspended his prison sentence and sentenced him to probation on the condition that he pay restitution to the victim for her expenses and pain and suffering. He argues that (a) a Maryland court is not authorized to order a criminal defendant

to pay restitution for a victim's pain and suffering; and (b) the restitution order was not supported by "competent evidence," as required by statute. The State concedes that the court was not authorized to order restitution for pain and suffering.[6] We agree.

■ CP § 11–603(a) provides:

A court may enter a judgment of restitution that orders a defendant or child respondent to make restitution in addition to any other penalty for the commission of a crime or delinquent act, if:

(1) as a direct result of the crime or delinquent act, property of the victim was stolen, damaged, destroyed, converted, or unlawfully obtained, or its value substantially decreased;

(2) as a direct result of the crime or delinquent act, the victim suffered:

(i) actual medical, dental, hospital, counseling, funeral, or burial expenses or losses;

(ii) direct out-of-pocket loss;

(iii) loss of earnings; or

(iv) expenses incurred with rehabilitation;

(3) the victim incurred medical expenses that were paid by the Department of Health and Mental Hygiene or any other governmental unit;

(4) a governmental unit incurred expenses in removing, towing, transporting, preserving, storing, selling, or destroying an abandoned vehicle as defined in § 25–201 of the Transportation Article;

(5) the Criminal Injuries Compensation Board paid benefits to a victim; or

---

**6.** In its brief, the State wrote that it "concedes that, under the facts and circumstances of this case, the sentencing court imposed an illegal sentence upon Addison." At oral argument, the State's counsel was asked whether he conceded that the sentence was error, to which he responded, "Yes."

(6) the Department of Health and Mental Hygiene or other governmental unit paid expenses incurred under Subtitle 1, Part II of this title.

When a judgment of restitution is entered under § 11–603, compliance "may be a requirement in the judgment of conviction," or, if probation is ordered, "shall be a condition of probation." CP § 11–607. "An order to pay restitution as a condition of probation is part of the punishment for the crime. As such, an illegal condition of probation can be challenged as an illegal sentence." *Juliano v. State*, 166 Md.App. 531, 537, 890 A.2d 847 (2006) (citation and quotations omitted). Although the statute expressly authorizes a court to order a criminal defendant to pay restitution for certain actual expenses or losses the victim incurred as a direct result of the crime, including medical expenses, it does not provide a court the authority to order a criminal defendant to pay restitution for pain and suffering.

■ As a starting point, "[i]t is important, in any analysis of [§ 11–603(a)],[7] to keep in mind that restitution under that statute is a *criminal sanction*, not a civil remedy." *Grey v. Allstate Ins. Co.*, 363 Md. 445, 451, 769 A.2d 891 (2001) (emphasis in original). Writing for the Court in *Grey*, Judge Wilner examined at length the history and purposes of restitution as a criminal penalty, and wrote, *id.* at 460, 769 A.2d 891:

We have, on several occasions, recognized restitution as meeting the objectives of both rehabilitation and retribution. In *Coles v. State*, 290 Md. 296, 305, 429 A.2d 1029 (1981), we declared that restitution needed to be viewed "as an aid in rehabilitating the defendant." *See also Lee v. State*, 307 Md. 74, 78, 512 A.2d 372 (1986), concluding that the payment of restitution as a condition of probation was "for the fundamental purpose of rehabilitating the defendant and

---

7. *Grey* referred to the statute then governing restitution, Maryland Code (1957), Article 27, § 807. The current statute, CP § 11–603, became effective October 1, 2001, several months after *Grey* was published, *see Grey*, 363 Md. at 450 n. 1, 769 A.2d 891, and is derived without substantive change from former Art. 27, §§ 813, 805A(b), and 807(a) and (e).

affording the aggrieved victim recompense for monetary loss." In *Songer v. State*, 327 Md. 42, 46, 607 A.2d 557 (1992) and *Anne Arundel Cty. v. Hartford Accident*, 329 Md. 677, 685, 621 A.2d 427 (1993), we also acknowledged the punitive effect of restitution.

The Court also noted that, "[i]n enacting these [restitution] provisions, the General Assembly understood that it was creating a special form of relief available through the criminal court that was not to supplant any relief that might be available to a victim or other person through the civil court." *Id.* at 464, 769 A.2d 891. Indeed, § 11–603(c) provides that "[a] judgment of restitution does not preclude the property owner or the victim ... from bringing a civil action to recover damages from the restitution obligor."

No Maryland case addresses whether a court may order a criminal defendant to pay restitution for a victim's pain and suffering under CP § 11–603. In *In re Zephrin D.*, 69 Md.App. 755, 519 A.2d 806 (1987), however, in the analogous context of a restitution order aimed at the parent of a delinquent juvenile, this Court recognized that there are limitations on the types of damages available for restitution. In that case, the juvenile court issued a judgment of restitution against the mother of a delinquent juvenile for damages to the vehicles the juvenile stole and for the cost of a rental car the owners used while their vehicles were being repaired. *Id.* at 757, 519 A.2d 806. The statute then governing the restitution available to victims of delinquent acts, Maryland Code (1974, 1984 Repl.Vol.), § 3–829 of the Courts and Judicial Proceedings Article ("CJP"),[8] provided:

> (a) The court may enter a judgment of restitution against the parent of a child, or the child in any case in which the

---

8. That statute has since been re-codified to § 3–8A–28 of the Courts and Judicial Proceedings Article, which provides: "The court may enter a judgment of restitution against the parent of a child, the child, or both as provided under Title 11, Subtitle 6 of the Criminal Procedure Article." Under the current statutory scheme, the damages for which a juvenile and/or his parent may be held liable are the same as a criminal defendant.

court finds a child has committed a delinquent act and during the commission of that delinquent act has:

(1) Stolen, damaged, or destroyed the property of another;

(2) Inflicted personal injury on another, requiring the injured person to incur medical, dental, hospital, or funeral expenses.

\* \* \*

(c) A judgment rendered under this section may not exceed:

(i) As to property stolen or destroyed, the lesser of the fair market value of the property or $5,000;

(ii) As to property damaged, the lesser of the amount of damage not to exceed the fair market value of the property damaged or $5,000;

(iii) As to personal injuries, inflicted, the lesser of the reasonable medical, dental, hospital, funeral, and burial expenses incurred by the injured person as a result of the injury or $5,000.

This Court held that by the use of the phrase "[a]s to property damaged" in subsection (c)(1)(ii), the General Assembly intended that only actual damages to the victim's property be included in a restitution order, not all damages recoverable in a civil action, such as the cost of a rental car. 69 Md.App. at 760–63, 519 A.2d 806. In addition, we noted:

Certain restrictions on amount, substance and source of restitution built into the legislative scheme of § 3–829 indicate ... that full tort recovery was not contemplated. For example, unlike in a cause of action sounding in tort, damages recoverable under § 3–829 are restricted in amount to a total limit of $ 5,000 for all acts arising out of a single incident. § 3–829(c)(2). The statute also contains limitations on the type of recoverable damages. As to personal injuries, only medical, dental, hospital, funeral and burial expenses incurred are recoverable. There is no provision under § 3–829 for an award for those ordinary

> tort damages *such as pain and suffering,* loss of income or future losses and future medical expenses.

*Id.* at 761, 519 A.2d 806 (emphasis added).

*In re John M.,* 129 Md.App. 165, 741 A.2d 503 (1999), is also instructive. John M. was found delinquent for sexually abusing two young cousins. *Id.* at 169, 741 A.2d 503. The juvenile court ordered him and his mother to pay $38,300 restitution for the counseling expenses the abuse victims already incurred and were expected to incur in the future. *Id.* In rejecting the required restitution of future counseling expenses, we observed that

> statutory limitations and due process considerations do not permit an order of restitution for counseling expenses that are not yet certain to occur. We are mindful that the restitution statutes, because they are penal in nature and modify the common law, need to be strictly construed. The statute provided that the juvenile court may award restitution for "reasonable counseling expenses from a licensed health care provider" when the delinquent act has "caused the victim of the delinquent to incur" such expenses. § 808(a)(i)(iii). Our observation in *Zephrin* that "there is no provision under [the restitution statute] for an award for those ordinary tort damages such as pain and suffering, loss of income or future losses and future medical expenses," while not essential to the holding in that case, is instructive.

*Id.* at 185, 741 A.2d 503.

Similarly, CP § 11–603(a)(2) provides that a court may order a criminal to pay restitution if, "as a direct result of the crime or delinquent act, the victim suffered: (i) actual medical, dental, hospital, counseling, funeral, or burial expenses or losses; (ii) direct out-of-pocket loss; (iii) loss of earnings; or (iv) expenses incurred with rehabilitation." The statute does not authorize restitution for pain and suffering. Its clear language and its specificity in the types of expenses subject to restitution undercut a broader reading of the statute. Moreover, even if the language were ambiguous, we would narrowly construe this penal statute and hold that restitution is avail-

able only for those actual damages expressly authorized by § 11–603, and not for pain and suffering.

The majority of courts from other jurisdictions have reached this same conclusion with respect to their restitution statutes. In *Sloan v. United States,* 527 A.2d 1277, 1280 (D.C.1987), the D.C. Court of Appeals held that the D.C. restitution statute providing that a court "shall take into consideration ... the actual damage of each victim" does not authorize a court to order restitution for pain and suffering. The court wrote:

> Given the corrective nature of restitution as a sentencing device, we find that a victim's damages must be liquidated or easily measurable to form the basis of such an award. As noted supra, a precise calculation of damages is not contemplated in a sentencing proceeding, but is reserved for a civil action. Therefore, we conclude that the term "actual damage" in § 16–711(b) includes known liquidated damages such as medical expenses, lost wages, and other expenses connected with the crime. Section 16–711(b) does not include those damages which are not presently and readily measurable, however, since these can be accurately determined only in a civil proceeding.
>
> Here, the trial court was free to include in its award [the victim's] lost wages and medical expenses, already accrued or reasonably anticipated, but was not free to include undetermined damages, such as his pain, disfigurement, suffering, and anguish resulting from appellant's attack. These damages are generally not properly part of a criminal proceeding, but are left to a more exacting determination in a civil proceeding, where the primary purpose is compensation of the victim. Thus, the trial court shall not consider [the victim's] pain, suffering, and disfigurement when it recalculates its award of restitution.

*Id.* at 1290. *See also Southall v. United States,* 716 A.2d 183, 187–88 (D.C.1998) (restating its *Sloan* holding); *Commonwealth v. Cannon,* 387 Pa.Super. 12, 563 A.2d 918, 927 (1989) (holding that the Pennsylvania statute, which provided for restitution when the victim suffered "[a]ctual bodily harm ...

directly resulting from the crime," "must be strictly construed," and "[the court's] reading of [the] statute at this time does not indicate that the legislature intended to include pain and suffering as part of restitution"); *Gladden v. State*, 644 So.2d 1267, 1268 (Ala.Crim.App.1993) (holding that the Alabama statute requiring restitution "for any pecuniary loss, damage or injury" resulting from a crime did not authorize restitution for pain and suffering); *Franks v. State*, 644 So.2d 1277 (Ala.Crim.App.1993) (reiterating its holding in *Gladden*). At least one state, Arizona, has included statutory language expressly excluding restitution awards for pain and suffering.[9]

In the absence of express language, we have found only one state, Washington, that has construed its laws to authorize restitution for a victim's pain and suffering. *State v. Morgan*, 8 Wash.App. 189, 504 P.2d 1195, 1196 (1973). The State of Washington's restitution statute provides that a court "may require the convicted person ... to make restitution to any person or persons who may have suffered loss or damage by reason of the commission of the crime...." Wash. Rev.Code § 9.92.060. The Court of Appeals of Washington held that the statute authorized restitution for pain and suffering because it constituted "loss or damage" sustained by the victim as a direct consequence of the crime and bore a "reasonable relation to the defendants' duty to make reparation." 504 P.2d at 1196. *See also State v. Rogers*, 30 Wash.App. 653, 638 P.2d 89, 91 (1981). The Washington statute, however, does not

---

**9.** Ariz. Rev. Stat. § 13–603.C (LexisNexis 2009) provides that, "[i]f a person is convicted of an offense, the court shall require the convicted person to make restitution to the person who is the victim of the crime ... in the full amount of the economic loss as determined by the court ..." Section 13–105.16, in turn, defines economic loss as:

> any loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, lost earnings and other losses that would not have been incurred but for the offense. Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages.

*See Town of Gilbert Prosecutor's Office v. Downie*, 218 Ariz. 466, 189 P.3d 393, 395 (2008); *State v. Wilkinson*, 202 Ariz. 27, 39 P.3d 1131, 1133 (2002).

contain language limiting restitution to actual damages, in contrast to the laws of Maryland and the other jurisdictions that we have examined.

■ Since we conclude that § 11–603(a) does not authorize a court to order restitution for a victim's pain and suffering, appellant's sentence was illegal. *See Holmes v. State,* 362 Md. 190, 195–96, 763 A.2d 737 (2000) ("A sentence that is not permitted by statute is an illegal sentence."). Maryland Rule 4–345 provides that "[t]he court may correct an illegal sentence at any time." We may correct an illegal sentence on appeal even if no objection was made in the trial court. *Ridgeway v. State,* 369 Md. 165, 171, 797 A.2d 1287 (2002) (citations omitted).

■ The court ordered appellant to pay $10,000 restitution to the victim "for the pain and suffering and the expenses that she's sustained as a result of this." Although the prosecutor requested that the court order $725 restitution for the victim's "medical bills that were not covered by insurance," the court did not allocate specific amounts of its cumulative restitution order toward the victim's expenses and pain and suffering, respectively. We vacate the entire $10,000 restitution order because the court did not specify which portion was for the victim's expenses. Appellant argues here (but not in the circuit court) that under CP § 11–603(b) the restitution order (including the $725) was erroneous because it was not supported by "competent evidence." Because of our disposition of this case, we need not deal with this issue, but appellant is free to make this argument in the circuit court.

Appellant argues that we should vacate the illegal portion of his sentence—*viz.* the condition that he pay $10,000 restitution to the victim—and allow the remainder of the sentence—ten years' incarceration of which the entire sentence was suspended, 200 hours of community service, completion of an anger management program, and court costs-to stand. The State requests that we vacate the entire sentence and remand to the circuit court for a new sentence. We believe the latter option is proper here.

Appellant was convicted of one count of second degree assault. The various components of the sentence comprised one sentence for that conviction. The court apparently suspended the entire ten-year sentence because it decided a more appropriate sentence was to order appellant to pay restitution. Indeed, the judge remarked regarding sentencing appellant to prison, "I don't see where that ... leaves us with any value as a community," and felt it appropriate that he pay restitution because "the responsibility of the court is ... to restore individuals who have been damaged by wrongful conduct and it's to punish them for their wrongful conduct." Given the totality of the sentence, we believe it appropriate to vacate the entire sentence and remand to the circuit court for resentencing. Other appellate courts have also looked at the entirety of a sentence when considering the scope of remand based on an illegal sentence. In *United States v. Quintieri*, 306 F.3d 1217, 1228 (2nd Cir.2002), the U.S. Court of Appeals for the Second Circuit recognized that an appellate court may vacate a sentence and remand for *de novo* rather than limited resentencing when the " 'spirit of the mandate' requires *de novo* sentencing, for example when the reversal effectively undoes the entire 'knot of calculation'...."[10] *See id.* n. 6 (discussing a split among federal circuit courts whether resentencing should be *de novo* absent explicit direction from the remanding court).

We are confident that, on remand, if the court feels it appropriate to order restitution for damages authorized by CP § 11–603(a), such as medical expenses or loss of earnings, it will do so only after it "is presented with competent evidence of any item listed in [§ 11–603(a)]." CP § 11–603(b).[11]

----

**10.** In *Quintieri*, whether resentencing was *de novo* or limited determined whether issues that were not raised at the first sentencing could be raised in an appeal of the resentencing. 306 F.3d at 1229.

**11.** In appellant's motion to stay the restitution order, he writes that he has already paid some restitution. The judge presiding at resentencing should consider evidence of any portions of the first sentence that appellant has satisfied.

## CONCLUSION

For the reasons stated, we hold that the trial judge did not err when he failed, *sua sponte,* to recuse himself from appellant's trial, and we affirm the conviction. But, we vacate appellant's sentence and remand to the circuit court for re-sentencing.

**JUDGMENT OF CONVICTION OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. SENTENCE OF THAT COURT VACATED. CASE RE-MANDED FOR RESENTENCING. COSTS TO BE DI-VIDED EQUALLY BETWEEN THE PARTIES.**