33 A.3d 1004

Melvin ALFORD

v.

STATE of Maryland.

No. 2459, Sept. Term, 2010.

Court of Special Appeals of Maryland.

Dec. 22, 2011.

584

**586**

Nancy S. Forster, Towson, MD, for appellant.

Gary E. O'Connor (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: MEREDITH, GRAEFF, WATTS, JJ.

WATTS, J.

Following a trial held from October 5, 2010, through October 7, 2010, appellant, Melvin Alford, was convicted by a jury in the Circuit Court for Baltimore City of robbery with a dangerous weapon, two counts of first-degree assault, two counts of second-degree assault, two counts of using a handgun in the commission of a crime of violence or a felony, two counts of false imprisonment, theft over $500, and possession of a regulated firearm. *See* Md.Code Ann., Criminal Law Art. ("C.L.") § 3–403 (robbery with a dangerous weapon); C.L. § 3–202 (first-degree assault); C.L. § 3–203 (second-degree assault); C.L. § 4–204 (use of a handgun in the commission of a crime of violence or a felony); false imprisonment under the common law (*See Watkins v. State*, 59 Md.App. 705, 725, 478 A.2d 326 (1984)); C.L. § 7–104 (theft over $500); and Md. Ann.Code, Public Safety Art. ("P.S.") § 5–133(b) (possession of a regulated firearm). On November 29, 2010, the circuit court sentenced appellant to twenty years' imprisonment for robbery with a dangerous weapon; ten years concurrent, with the first five years without the possibility of parole, for use of a handgun in the commission of a crime of violence; fifteen

years consecutive for first-degree assault; and five years consecutive without the possibility of parole for possession of a regulated firearm for a total of forty years.[1]

Appellant noted an appeal, raising four issues, which we rephrased and reordered [2] as follows:

I. Whether the circuit court erred and defense counsel rendered ineffective assistance of counsel by failing to ask follow-up questions of Juror 753 who responded affirmatively to *voir dire* questions?

II. Whether the circuit court erred in denying appellant's request to discharge his counsel?

III. Whether the circuit court erred in handling a note from the jury?

IV. Is the verdict defective because Juror Number Five's response to polling was not audibly recorded?

We answer all four questions in the negative and, therefore, we affirm the judgments of conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 24, 2009, Lanay Young, an Assistant Store Manager of a Rite Aid store located in the Patapsco Avenue Shopping Center in Baltimore City, arrived at work around 7:45 a.m. At that time, Young was the only person in the store. The first cashier, Garry McWatters, arrived around 8:00 a.m., the time the store was to open. Young unlocked the door allowing McWatters to enter the store. Young testified that

---

1. The remaining convictions merged for sentencing.

2. Appellant phrased and ordered the issues thus:
 I. Did the trial court err and was defense counsel ineffective in failing to ask follow-up questions of Juror 753 who responded affirmatively to *voir dire* questions that would have demonstrated bias or have disqualified the juror from serving thereby denying Mr. Alford his right to a fair and impartial jury?
 II. Is the verdict defective because not all jurors responded when polled?
 III. Did the trial court err in refusing to respond to the jury's note?
 IV. Did the trial court err in refusing to allow Mr. Alford to discharge his counsel?

"very, very shortly after [McWatters] started," she noticed a man enter the vestibule area, put on a ski mask, and enter the store. The man, later identified by Young at trial as appellant, revealed a small handgun and ordered Young and McWatters to move to the manager's office. Young testified that appellant ordered McWatters to lock the front door and he complied.

Appellant ordered Young to retrieve money from the safe. Young testified that she gave appellant money from the safe and after several unsuccessful attempts to stuff the money into his pockets, he ordered Young to put the money into a plastic Rite Aid bag. After appellant left the store, Young called police and described the robber as a short male in his early thirties who was wearing a black face mask, blue jeans, black and gray tennis shoes, and a blue jacket.

Officer Craig Stackewicz of the Baltimore City Police Department testified at trial that he was on patrol in the Lakeland area when he heard a call for an armed robbery. The robber was described as a man wearing blue jeans, a gray sweat shirt, and a face mask, who was said to be running north from the Rite Aid located in Lakeland. Officer Stackewicz drove to the area and noticed a man running out of an alley who matched the description given on the call. Officer Stackewicz ordered the person to "stop where he was," but the individual "took off running." After a chase, Officer Stackewicz arrested the person. At trial, Officer Stackewicz identified appellant as the person he chased and arrested. Officer Stackewicz testified that he recovered a gun and a large amount of money from appellant, including a substantial sum of money in a Rite Aid bag that appellant was carrying.

Detective Kenneth Richard testified at trial that he drove Young to the location where appellant was detained, and Young identified appellant as the individual who entered the store demanding money.[3]

---

3. At trial, the State called McWatters who testified that he was unable to identify the robber, but otherwise corroborated Young's version of

Appellant testified in his own defense and denied that he robbed the Rite Aid. Appellant testified that he had $340 on his person at the time of the arrest but was not carrying a gun. Appellant testified that he received the money from selling ten bags of marijuana to a friend shortly before being chased by Officer Stackewicz. Appellant denied having a Rite Aid bag. Appellant testified that two months prior to the January 24, 2009, incident he had seen the gun recovered by Officer Stackewicz lying around outside and he had thrown the gun into the bulk trash behind his house.[4]

### *Voir Dire*

Prior to the jury selection process, the trial judge had advised the attorneys as follows:

When we go through the individual voir dire I will ask the attorneys if you have any questions. Once I complete my exhaustive—traditionally exhaustive list of questions, I will continue to ask if you have any questions of the jurors until one of you goes on a fishing expedition and then I will no longer ask you do you have any questions of the jurors.

During jury selection, the circuit court asked the jurors as a group, in pertinent part: "Has any member of the jury panel or a member of your household or immediate family ever been connected with a law enforcement agency, such as any Police Department, sheriff's office, prosecutor's office, F.B.I., a correctional facility or the Office of the Public Defender or any criminal defense related entity, and when I say connected

---

the facts. The State called two additional witnesses: Ted Turner, a Crime Lab technician with the Baltimore City Police Department who testified as an expert in the area of firearms examination limited to operability and Kenneth Jones, a DNA Analyst for the Baltimore City Police Department who testified as an expert in the area of DNA analysis. Turner testified that the weapon retrieved from appellant was inoperable. Jones testified that only one of three swabs of the gun produced enough DNA to undertake a statistical analysis. Jones testified that the samples contained DNA from more than one individual and the chances of DNA found being from a person other than appellant was "one in twenty-eight thousand four hundred."

**4.** The defense produced no other witnesses.

with, I mean employed by, have a contractual relationship with, or a professional relationship with either of those types of organizations[?] If so, please stand." The circuit court also asked the group if "any member of the jury panel or a member of your immediate family or a household ever been, part one, the victim of a crime, part two, accused of a crime, part three, convicted of a crime, part four, or have charges pending. If so, please stand." Juror 753 responded by standing to both questions.

Juror 753 was not asked individual or follow-up questions regarding either question or about any other matters.[5] During the juror selection process, when the courtroom clerk asked whether Juror 753 was acceptable to the State and defense, both attorneys responded "Acceptable." Juror 753 was empaneled as Juror Number Four.

### *Discharge of Counsel*

After jury selection, but prior to opening statements, appellant sought to discharge his counsel. The following exchange occurred:

[APPELLANT]: Good morning, Your Honor, excuse me, I need to say something, please.

THE COURT: You want to say it to your attorney first?

[APPELLANT]: I already spoke to her.

[DEFENSE COUNSEL]: He already spoke to me, Your Honor, so he would like to address the Court.

THE COURT: All right.

---

5. After the trial judge asked the general *voir dire* questions of the entire jury pool, the trial judge asked individual jurors to approach the bench for further questioning. A review of the record reveals that the courtroom clerk asked individual jurors, in the following order, to approach the bench: 737, 738, 740, 741, 744, 746, 748, 749, 750, 776, 757, 760, 671, 765, 766, 768, 771, 773, 775, 780, 781, 782, 784, 787, 789, 790, 795, 799, 811, 813, 815, 820, 824, 825, 826, 828, 832, 834, 839, 843, 844, 857, 858, 859, 860, 862, [863], 865, 867, 869, 870, 874, 876, 877, 882, 717, 644. Juror 753 was not asked to approach the bench for questioning.

[APPELLANT]: Yes, my name is Melvin Alford. This case has been going on for quite awhile. I have had [defense counsel] since August of last year. Okay I put um, in the last six, seven months I have put in grievances to the Attorney Grievance Commission. I wrote to the supervisors asking for change because

I do not believe I'm going to get a fair trial with my lawyer. I've been asking her to check out motions and for her to meet with me or talk with me through the phone or through a family member. So we can communicate so I can know what she's doing, and we can come together with some ideas, but this has not happened. Every time I come to the courtroom I don't know what's going on. I didn't even know I was having a hearing the last time I came in court. The things that was brung up as a probable cause, we haven't discussed it, I didn't even know anything. Then I was given advice last week that was extremely impossible for this situation. I mean—

THE COURT: Such as?

[APPELLANT]: I was told to say I found some money because people were going to believe I had it anyway.

THE COURT: You were told to say you found some money?

[APPELLANT]: Yeah, I was told to say that.

THE COURT: What do you mean?

[APPELLANT]: As a defense, and that was advice that I was just given, and I was like, I can't understand why would you say that to me and—all I am being told actually really is to take a plea. Anything as far as this defense I don't know what's going on. I don't even know what she's planning to do for a defense. So I'm feeling here this is my life that's on the line here. I don't want to be in no jail for the rest of my life for something that I didn't do, and I didn't take a chance to sit down to speak for myself or try to fight for myself because I'm asking my lawyer. It's been documented. I mean it's been going on with my family

members, calling the supervisor, her not trying to speak back to me, her asking to be taken off my case.

THE COURT: You called her supervisor?

[APPELLANT]: She asked to be taken off my case because she said I grieved her.

THE COURT: She said you do what?

[APPELLANT]: Because I grieved her to the Attorney Grievance Commission, and I wrote to her supervisors. She asked the supervisor—

THE COURT: Let me be clear. You actually filed a complaint with the Attorney Grievance?

[APPELLANT]: Yes, and there's nothing being done. I'm getting ready to go to trial. I don't know anything. I don't know what's going on with my case, and I'm asking you, can if I get it postponed I can get—I can hire a lawyer. My family is ready to put money together. I don't have no family in the State of Maryland so all of my family is out of state. Whenever they put money together to hire me a lawyer because I don't want to waste the rest of my life for something that I know wasn't right. And right now I'm going to trial and this is not right because I don't know anything. I don't know what defense we're going to have. I mean I tried to go along with it after I wrote the grievances. I tried to—

THE COURT: When did you file a grievance?

[APPELLANT]: Yes.

THE COURT: When?

[APPELLANT]: I filed the grievance in June, June or July, July.

THE COURT: Of this year?

[APPELLANT]: Yes. I wrote one, I gave a copy to her supervisors and I gave a copy for myself, and a copy to the Attorney Grievance Commission, and then I filed another complaint because things was not getting done. I don't know what's happening, but I'm just—don't want to, you know, sit in this courtroom and go to trial and don't know

what's going to happen to me or not. And I don't have nothing to say for myself or stand up for myself. I mean, things are here documented I asked for motions for, it's documented right here on these charges, but it has not been done.

THE COURT: Well, one moment. All right what did you ask to be done that was not done?

[APPELLANT]: I asked for my lawyer to be changed.

THE COURT: I'm sorry?

[APPELLANT]: I asked for my lawyer to be changed because we was constantly disagreeing. I wasn't getting anybody to come and see me. I don't know anything about my case as far as—

THE COURT: Okay.

[APPELLANT]:—from the lawyer's point of view this whole time.

THE COURT: Okay. No, no. I'm just trying to outline what you asked for. What else did you ask for?

[APPELLANT]: I asked for an investigation to be done.

THE COURT: What kind of investigation?

[APPELLANT]: For my paperwork as far as what I need to do to file motions because I have a right to be helped by a lawyer and the motions that I was asking for are—the reviews I was asking for, she wasn't doing it so I asked to be helped with it. It's not happening.

THE COURT: I'm sorry. I'm still not clear. You asked that the case be investigated or prepared or what?

[APPELLANT]: Well no, as far as the paperwork, someone to help me with my paperwork to file these motions because she wasn't doing it, and that didn't happen either. They gave, they said—

THE COURT: You used the word investigation, I am trying to understand that. You said you asked for an investigation.

[APPELLANT]: In my case as far as their department, in their department, in the Public Defenders Office.

THE COURT: So you asked the Public Defenders to, in effect, prepare your case—

[APPELLANT]: Yes.

THE COURT:—other than this attorney?

[APPELLANT]: Yes.

THE COURT: Okay.

[APPELLANT]: They gave assistance to her, but I think it was such short notice when the assistant came that things are just not happening because, like I said before, I should have known something about what was going on before I had court last week Wednesday. I didn't know anything, but this is certainly—the last court date was in June. We had all of this time for somebody to come and see me and to actually prepare the case. They came to see me once. We went over some things, but then I have witnesses for my defense and nobody went and even tried to spoke to and I spoke to my lawyer about this. I spoke to the lawyer and the assistant about these people who seen that this didn't take place.

\* \* \*

THE COURT: The Court has considered all of the allegations made by [appellant]. The Court is satisfied that there is tension between attorney and client. The Court is aware that quite often there is tension between attorney and client.

The Court is concerned that some things that [appellant] has said he cannot say in the form of a matter of fact. For instance, he cannot say that defense counsel is wrong when she says she spoke to his mother. He is in jail and defense counsel represents, and this Court accepts, that she spoke to his mother. This Court does not accept that [appellant's counsel] told [appellant] to put on perjured testimony.

This Court finds it interesting to say that [appellant] just got fed up to the point that he would ask for a new attorney today when we should be selecting a jury, after filing a grievance in June or July. Usually speaking the motion for a

new attorney comes before a grievance or they go hand in hand, if a grievance is ever filed.

This Court finds frivolous the concerns about the witness or witnesses. In this court's opinion, if these witnesses—one, Ms. Johnson is available, counsel represents she has spoken to Ms. Johnson on at least one occasion, and the other two witnesses [appellant] doesn't know their complete name or one doesn't know her complete name and the other one he doesn't know her name at all. And so this Court, despite the tension, and this Court will say I've seen attorneys and clients have a tough time from both sides of the fence. As a lawyer I watched defense attorneys and their clients fight and as a judge I've watched them fight. And I have seen some win and some lose.

Based on what I saw in the motions, based on what has been presented to me today, this Court is not satisfied that you have made a legitimate claim for discharging your attorney and so this Court necessarily denies your implied motion for a postponement because we are going forward.

Now, can you still discharge your attorney? Yes, you may, but that means you will represent yourself. And so I'm going ask you to . . . answer some questions. Stand up, sir. Have you received a copy of the charging document?

[APPELLANT]: Yes.

THE COURT: Okay. Then I need to advise you that you have the right to continue to be represented by Ms. Frame from the Public Defender's Office or you can represent yourself. An attorney . . . can assist you in trying this case . . . has prepared the case . . . is ready for trial . . . has set forth motions that have been denied . . . has prepared . . . to cross examine witnesses who would testify against you, to present witnesses. . . . That's a decision that you have to make. An attorney would make objections during . . . the trial understanding the rules of evidence and the rules of procedure.

An attorney . . . would make opening statements and closing arguments . . . would participate in the selection of a

jury from the voting and motor rolls of Baltimore City ... will raise any issues that may come up during the course of the trial ... based on ... unexpected developments that occur.... If you have not been trained as an attorney, that means you ... have a law degree and practice, you will be at a considerable disadvantage in discharging this attorney.

You have the indictments, you have already been arraigned ... under case ending in 002, you are charged with robbery with a dangerous and deadly weapon ... the maximum penalty is twenty years, robbery, fifteen years, assault first degree, twenty-five years, use of a handgun in the commission of a crime of violence, twenty years. The case ending in 003 with a different victim you are charged with robbery, robbery with a dangerous and deadly weapon, twenty years, robbery, fifteen years, assault first degree, twenty-five years, theft under five hundred dollars, eighteen months and a fine, theft over five hundred dollars, fifteen years, wear carry transport a handgun, three years, use of a handgun in the commission of a crime of violence, twenty years. The case ending in 004, possession of a firearm after being convicted of a disqualifying crime, five years without parole. Case ending in 005, false imprisonment, case ending in 006, false imprisonment, I believe that those two are common law offenses which has no statutory maximum. That means anything that is not cruel or unusual ... could be imposed against you if convicted.... Do you understand that, sir?

[APPELLANT]: I understand it, sir, but I am—

THE COURT: But what sir?

[APPELLANT]: You asked me if I had anything to say about it. Everything I say got twisted up in here so it's like even if I like try to represent myself, just like you said, I will be at a disadvantage, even speaking to you some things that I've said got twisted around. I don't know how[.]

\* \* \*

**But I understand what you just said, and I can't possibly represent myself because I can see what it's**

going to be. But I want it on record that I did object to my lawyer representing me and I do not believe there is no way possible for me to get a fair trial with my lawyer representing me, and I wanted to save up that for appeal if that possibly come up because that right now is the big issue for me.

\* \* \*

THE COURT: And it is preserved. [Appellant's counsel].

[APPELLANT'S COUNSEL]: Yes, Your Honor.

THE COURT: Let me ask you directly can you represent, zealously represent this defendant, your client within the bounds of the law?

[APPELLANT'S COUNSEL]: Yes, Your Honor.

THE COURT: Do you harbor any ill will or difficulties that would prevent you or impede your ability to represent this defendant based on his motion today or his dismissed grievance in the past?

[APPELLANT'S COUNSEL]: Your Honor, my difficulty really is having any meaningful discussions with my client. As the Court heard today, these are things that he says to me quite often that things get twisted. I am never really quite sure, so to be perfectly honest with the Court, after someone files an attorney grievance against you, which you're required to respond to and defend yourself, certainly something happens to that relationship.

I can represent him today. I can represent him zealously and, as the Court said, there is often tension between attorneys and clients So yes, I can represent him zealously, but in terms of my relationship with him, it's not a good relationship, Your Honor.

(Emphasis added).

### Jury Note

During jury deliberations the jury submitted a note requesting an "arrest report." The following exchange occurred as to the note with appellant, appellant's counsel, and the prosecutor present:

THE COURT: All right, I'm going to ask that you take the handcuffs off . . . because we have a verdict. We did have a note and the note reads may we please request a copy of the following, and below that it's arrest report, thank you. I will simply say to the jury that I gather you—I apologize for not getting back to them any quicker than now. I will say I gather you remember my instructions that if it's not in evidence I can't give it to you anyway, words to that effect, and then I will take the verdict to make sure there is no issue. Any questions about that State?

[THE PROSECUTOR]: No Your Honor.

THE COURT: Defense?

[DEFENSE COUNSEL]: No.

The circuit court then addressed the jury regarding the note:

THE COURT: All right, my apologies for not getting back to you sooner. I was in another Court, as I told you, I was handling other matters, and I did receive a note from you may we request a copy of the following, and then you have colons and then arrest report, thank you. I gather you concluded that I had already given you instructions on that, that if you didn't have it, you couldn't have it, right, and I am informed that you now have a verdict; is that correct?

THE JURY: Yes.

### *Jury Poll*

After the jury verdict had been read aloud by the foreperson, appellant asked to poll the jury. During the poll, the following occurred:

THE CLERK: Juror number five, you have heard the verdict of your foreperson, is your verdict the same?

THE JUROR: (No audible response.) [6]

\*　　\*　　\*

---

6. All other jurors responded in numerical sequence to the same question with an audibly affirmative statement.

THE CLERK: Harken to the verdict as the Court has recorded it. You find that [appellant] case number 509058002, count one robbery with a dangerous weapon of Lanay Young, guilty; count number two, robbery of Lanay Young, guilty; count number three, assault of Lanay Young in the first degree, guilty; count number four, assault of Lanay Young in the second degree, guilty; count number five, theft of property less than 500 dollars, not guilty; count number six, theft of property over 500 dollars, guilty; count number seven, use of a handgun in the commission of a felony and crime of violence, guilty; as to case number 509058003, you find [appellant] on count one, assault of Garry McWatters in the first degree, guilty; count number two, assault of Garry McWatters in the second degree, guilty; count number three, use of a handgun in the commission of a felony or a crime of violence, guilty; as to case number 509058004, you find [appellant] on the charge of count one, possessing a regulated firearm after being convicted of a disqualifying crime, guilty; as to case number 509058005, you find [appellant] on the charge of count one, false imprisonment of Lanay Young, guilty; as to case number 509058006, you find [appellant] on the charge of false imprisonment of Garry McWatters, guilty; and so say you all?

THE JURY: Yes.

## DISCUSSION

### I.

Appellant contends that the trial court erred and defense counsel rendered ineffective assistance of counsel in "failing to ask follow-up questions of [J]uror 753 who responded affirmatively to *voir dire* questions that would have demonstrated bias or would have disqualified the juror from serving[.]" Appellant argues that because Juror 753 responded affirmatively to two *voir dire* questions but was "never individually *voir dired* as were others who responded affirmatively to these questions," the trial court erred in failing to ask follow-

up questions of Juror 753. Appellant argues that the failure of appellant's counsel to ask follow-up questions "constitute[d] ineffective assistance of counsel, warranting reversal."

The State contends that appellant has not preserved the claim for appellate review because he failed to object to Juror 753 being empaneled as Juror Number Four and the ineffective assistance of counsel claim is not properly raised on appeal.

Alternatively, the State contends that, if preserved, appellant has failed to provide any support for the contention that a trial court is required to ask "follow-up questions regarding ambiguous voir dire responses absent a request from [appellant]"; and appellant has not established "that defense counsel's performance was deficient or prejudicial." We agree with the State on both positions.

### (1) Juror 753

■■■ A criminal defendant has the right to trial by an impartial jury. U.S. Const. amend. VI, XIV; *Owens v. State*, 399 Md. 388, 405, 924 A.2d 1072 (2007). *Voir dire* is the means by which to "identify and challenge unqualified jurors." *Owens*, 399 Md. at 402, 924 A.2d 1072. As the Court of Appeals described:

> The purpose of voir dire is to ensure and secure a defendant's right to a fair and impartial trial by permitting the selection of a jury comprised of venirepersons who do not hold preconceived notions or biases that would affect the outcome of the trial. As we have said, in pursuit of this goal, a trial court must question the venire and consider whether any of the answers reveals such a bias. Any question likely to elicit disqualifying information must be asked. Failure to do so taints the objectivity and thus impartiality of the jury, with negative implications for the defendant's right to a fair trial.

*Moore v. State*, 412 Md. 635, 664, 989 A.2d 1150 (2010) (citation omitted). "Bias is a question of fact, the existence of which is a matter left to the trial judge, the focal point in the

process, whose predominant function in determining juror bias involves credibility findings whose basis cannot be discerned from an appellate record." *Williams v. State,* 394 Md. 98, 113, 904 A.2d 534 (2006) (citations and internal quotations omitted). The standard of review for such findings is abuse of discretion. *Moore,* 412 Md. at 654, 989 A.2d 1150.

 Prospective jurors are presumed to be unbiased, and the challenging party has the burden of proof to overcome that presumption. *Hunt v. State,* 345 Md. 122, 146, 691 A.2d 1255 (1997). "If a criminal defendant undertakes to challenge a juror on grounds of bias, the attack must be affirmatively advanced at the time of trial." *Id.* at 146, 691 A.2d 1255. "Should an unqualified juror be empanelled, courts are satisfied generally with the verdict when the record establishes that the juror did not evade intentionally disqualification and that his or her service was performed without bias." *Owens,* 399 Md. at 425 n. 45, 924 A.2d 1072 (citations omitted).

 In the present case, appellant has failed to preserve an issue as to the selection of Juror 753 for appellate review. Juror 753 was empaneled as the fourth juror. Juror 753 answered two *voir dire* questions affirmatively but was not asked follow-up questions by the trial judge or appellant's counsel. The record reflects that after responding affirmatively to general *voir dire* questions, jurors were called to the bench for individual or follow-up questions. Juror 753 was not among the jurors called to the bench. Appellant's counsel failed to object to Juror 753 not being called for individual questioning. After the individual questioning was completed, counsel for both parties accepted Juror 753 **without objection** upon request from the courtroom clerk to empanel the juror. Appellant failed to object that no individual questions were asked of Juror 753, failed to request that such questions be asked, and affirmatively accepted Juror 753 for empanelling on the jury. As such, appellant has waived appellate review of this issue.

Nonetheless, we shall briefly address appellant's argument that the circuit court erred in failing to ask, *sua sponte,* follow-

up questions of Juror 753 in light of *Dingle v. State*, 361 Md. 1, 759 A.2d 819 (2000), which appellant contends stands for the proposition that "it is the judge's obligation to make sure that a juror who responds affirmatively to a *voir dire* question that may expose a basis for his disqualification or bias, is asked follow-up questions." In *Dingle*, the Court of Appeals held that the trial court erred in asking two-part *voir dire* questions. 361 Md. at 8–9, 759 A.2d 819. The two-part *voir dire* consisted of the trial court asking the jury panel whether any juror had experiences, such as having been a victim of a crime,[7] or associations, such as being associated with police officers,[8] and whether these experiences or associations would affect the juror's ability to be a fair and impartial juror. *Id.* at 3–4, 759 A.2d 819. The Court of Appeals held that the *voir dire* procedure usurped the court's responsibility to ascertain the existence of cause for disqualification because the procedure allowed "the individual venire person to decide his or her ability to be fair and impartial." *Id.* at 9–10, 21, 759 A.2d 819. The Court of Appeals stated that:

> Because [the trial judge] did not require an answer to be given to the question as to the existence of the status or experience unless accompanied by a statement of partiality, the trial judge was precluded from discharging his responsi-

---

7. The *voir dire* question was phrased as follows:

 Have you or any family member or close personal friend ever been the victim of a crime, and if your answer to that part of the question is yes, would that fact interfere with your ability to be fair and impartial in this case in which the state alleges that the defendants have committed a crime?

 *Id.* at 4 n. 4, 759 A.2d 819 (quotations omitted).

8. The *voir dire* question was phrased as follows:

 Are any of you or your family members or close personal friends associated with members of any law-enforcement agency, like the Baltimore County Police Department, the Baltimore City Police Department, the Federal Bureau of Investigation, the Maryland State Police, the Secret Service? That's part A.

 Part B of the question, and if you are so associated, would that fact interfere with your ability to be fair and impartial if you were seated as a juror in this case?

 *Id.* at 4 n. 4, 759 A.2d 819 (quotations omitted).

bility, *i.e.* exercising discretion, and, at the same time, the petitioner was denied the opportunity to discover and challenge venire persons who might be biased.

The effect on the petitioner is particularly egregious: as we have seen, the party who would challenge a venire person for cause has the burden of presenting facts demonstrating the disqualification. As already pointed out, the strike for cause process encompasses the situation where the motion to strike is made on the basis of information developed during the voir dire process, not simply where the prospective juror admits an inability to be fair and impartial. Without adequate voir dire, there simply can be no such showing. The ability to challenge for cause is empty indeed if no way is provided for developing or having access to relevant information. What the dissent said in *Davis* [*v. State*, 333 Md. 27, 633 A.2d 867 (1993)] applies just as forcibly to the case sub judice:

"When the inquiries that constitute proper voir dire are restrictively interpreted, so that the voir dire process does not produce any information other than that which is automatically disqualifying, the defendant may be deprived of the right to a fair and impartial jury; he or she is completely at the mercy of the good faith, objectivity, and astuteness of the individual venirepersons. I believe that it is an abuse of discretion for the court to so restrict the voir dire process."

*Id.* at 17–18, 759 A.2d 819 (some internal citations and quotations omitted). To be sure, in *Dingle,* the Court of Appeals stated "the trial judge is charged with impaneling of the jury and must determine, in the final analysis, the fitness of the individual venire persons." 361 Md. at 8, 759 A.2d 819. The Court of Appeals made the statement under circumstances in which jurors were allowed to determine whether they had the ability to be fair and impartial before responding affirmatively to general *voir dire* questions.

In this case, the trial judge did not employ the compound question format used in *Dingle.* Here, the trial

judge specifically asked jurors to stand if they had certain associations or experiences. Prior to beginning the selection process, the trial judge advised the attorneys that they could ask individual questions of the jurors and the judge permitted individual questioning of jurors. As such, the trial judge provided the opportunity for appellant to ask individual questions of Juror 753, explore the juror's qualifications and potential bias, and challenge the juror. *Dingle* is obviously distinguishable. We see no merit in appellant's contention that the circuit court had an obligation to *sua sponte* conduct questioning of Juror 753 under the circumstances presented in this case. More importantly, appellant has not preserved the issue for appellate review, he failed to object in any manner to the alleged oversight of the court in not questioning the juror, and agreed that Juror Number Four was acceptable to the defense.

### (2) Ineffective Assistance of Counsel

A criminal defendant's right to representation by an attorney is protected by the United States Constitution, the Maryland Constitution, and Maryland case law. U.S. Const. amend. XI; Md. Const. Decl. of Rts. art. 21; *Denisyuk v. State*, 422 Md. 462, 465–66, 30 A.3d 914 (2011). The right to counsel includes the right to effective and competent counsel. *Denisyuk*, 422 Md. at 469–70, 30 A.3d 914 (citing *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Judicial scrutiny of counsel's performance must be highly deferential ... [and, for fairness, must] evaluate the conduct from counsel's perspective at the time [of the alleged deficient representation]." [9] *Id.* at 689, 104 S.Ct. 2052.

---

**9.** A two-pronged test is used to determine whether a criminal defendant is entitled to relief as a result of alleged constitutionally deficient

In Maryland, a defendant's attack of a criminal judgment on the basis of ineffective counsel generally takes place at post-conviction review, where the opportunity for further fact-finding exists. *Mosley v. State,* 378 Md. 548, 558–59, 836 A.2d 678 (2003) ("[A] post-conviction proceeding pursuant to the Maryland Uniform Post Conviction Procedure Act, Maryland Code, § 7–102 of the Criminal Procedure Article (2001), is the most appropriate way to raise the claim of ineffective assistance of counsel.") (footnote omitted). In *Addison v. State,* 191 Md.App. 159, 174–75, 990 A.2d 614 *cert. denied,* 415 Md. 38, 997 A.2d 789 (2010), we stated that:

> The Court of Appeals has repeatedly stated that the "desirable procedure" for presenting claims of ineffective assistance of counsel is through post-conviction proceedings. *Johnson v. State,* 292 Md. 405, 434, 439 A.2d 542 (1982) (citation and internal quotations omitted); *see also, e.g., Ware v. State,* 360 Md. 650, 706, 759 A.2d 764 (2000). In *Johnson,* the Court of Appeals explained:
>
>> In essence, it is because the trial record does not ordinarily illuminate the basis for the challenged acts or omissions of counsel, that a claim of ineffective assistance is more appropriately made in a post conviction proceeding[.] Moreover, under the settled rules of appellate procedure, a claim of ineffective assistance of counsel not presented to the trial court generally is not an issue which will be reviewed initially on direct appeal, although competency of counsel may be raised for the first time at a [ ] post conviction proceeding. Upon such a collateral attack, there is presented an opportunity for taking testimony, receiving evidence, and making factual findings concerning the allegations of counsel's incompetence. By having counsel testify and describe his or her reasons for acting or failing to act in the manner complained of, the post conviction court is better able to determine intelligently

---

representation. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. "First, the defendant must show that counsel's performance was deficient." *Id.* "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*

whether the attorney's actions met the applicable standard of competence. Where, as here, the record sheds no light on why counsel acted as he did, direct review by this Court would primarily involve the perilous process of second-guessing, perhaps resulting in an unnecessary reversal in a case where sound but unapparent reasons existed for counsel's actions.

*Id.* at 435 [439 A.2d 542] (citations and quotations omitted).[ 10]

(Alterations in original).

In the present case, appellant seeks to raise an ineffective assistance of counsel claim for the first time on direct appeal—where the opportunity for further fact-finding does not exist. As we stated in *Addison,* 191 Md.App. at 175, 990 A.2d 614, "[w]here, as here, the record sheds no light on why counsel acted as he did, direct review by this Court would primarily involve the perilous process of second-guessing, perhaps resulting in an unnecessary reversal in a case where sound but unapparent reasons existed for counsel's actions." It is unclear from the record in the instant matter why appellant's counsel failed to ask follow-up questions of Juror 753 or to object to Juror 753 being empaneled as Juror Number Four. Appellant's counsel's failure to object may have been part of a strategy to obtain Juror 753 in lieu of other members of the panel. It is impossible to discern whether this was a decision based on trial strategy—with appellant's counsel finding the juror to be acceptable on other grounds or for reasons unrelated to the juror's two affirmative responses. The validity of the ineffective assistance of counsel claim cannot be determined without the opportunity for fact finding. Accordingly, we will not review the issue for the first time on direct appeal.

---

**10.** We note that an appellate court will consider a direct appeal in "exceptional cases where the trial record reveals counsel's ineffectiveness to be 'so blatant and egregious'" to clearly require review. *Mosley,* 378 Md. at 562–63, 836 A.2d 678 (2003) (footnote and citation omitted).

## II.

Appellant contends that the "trial court erred in refusing to allow [him] to discharge counsel after [he] provid[ed] meritorious reasons for doing so." Appellant argues that he has a constitutional right to representation by a competent attorney and under the circumstances in the case, his attorney was not competent. Appellant points out that he advised the circuit court that his attorney: (1) failed to investigate or call at trial three witnesses appellant had identified; (2) failed to sufficiently communicate with appellant before trial; (3) failed to file motions requested by appellant; and (4) had a poor relationship with him. Appellant maintains that he provided a meritorious basis to discharge his attorney and that the circuit court erred when it found the reasons to be unmeritorious.

The State responds that the "trial court properly exercised its discretion in determining that [appellant]'s reasons for requesting discharge of counsel on the morning of the first day of trial were not meritorious." The State contends that the circuit court addressed appellant's allegations in detail, found the allegations lacked merit, and that the court's findings are supported by the record. The State points out that the circuit court properly considered appellant's reasons for wanting to discharge his counsel and, after finding the reasons unmeritorious, properly advised appellant of the right to proceed *pro se*. The State argues that appellant's contention that the circuit court erred in finding that he failed to make a legitimate claim for discharging his attorney is without merit. We agree.

A defendant in a criminal prosecution has a constitutional right to the effective assistance of counsel and the corresponding right to reject that assistance and represent himself. *Gonzales v. State*, 408 Md. 515, 529–30, 970 A.2d 908 (2009). As to the implementation and protection of the right to counsel, Md. Rule 4–215(e) provides as follows:

If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request.

If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) [11] of this Rule if the docket or file does not reflect prior compliance.

(Footnote added).

In *Gonzales*, 408 Md. at 531–32, 970 A.2d 908, the Court of Appeals analyzed Md. Rule 4–215 and stated as follows:

Under the Rule, when a defendant requests permission to discharge an attorney whose appearance has been entered in his or her case, the court must provide the defendant an opportunity to explain why the defendant wishes to discharge that attorney. Next, the trial court must make a determination about whether the defendant's desire to discharge counsel is meritorious.

---

11. Md. Rule 4–215(a)(1–4) provides as follows:

(a) First appearance in court without counsel. At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge, the court shall:

(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.
(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.
(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.
(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

. . . .

> When a defendant makes an unmeritorious request to discharge counsel, the trial judge may proceed in one of three ways: (1) deny the request and, if the defendant rejects the right to represent himself and instead elects to keep the attorney he has, continue the proceedings; (2) permit the discharge in accordance with the Rule, but require counsel to remain available on a standby basis; (3) grant the request in accordance with the Rule and relieve counsel of any further obligation.

(Citations omitted).

 In this case, the record demonstrates that the trial judge properly followed the requirements of Md. Rule 4–215(a)(1)–(4) and (e) in evaluating appellant's request to discharge his attorney. The trial judge considered the reasons for the request and found them to be unmeritorious. In finding appellant's reasons unmeritorious, the trial judge concluded that: (1) defense counsel was credible when she stated that appellant had not provided defense counsel with the names of individuals who had actually witnessed the incident to interview; (2) defense counsel was credible when she stated that she reasonably responded to appellant's requests for communication, as she responded to all three written requests and visited appellant twice before trial; (3) defense counsel filed reasonable motions and acted reasonably in an effort to defend appellant; (4) tension existed between counsel and appellant, but the tension was not so unusual to rise to the level of interfering with the defense in appellant's case; and (5) appellant was simply trying to delay trial, given that he filed a grievance months before trial but did not take affirmative action to discharge counsel until the day of the trial.

The trial judge determined, based upon the circumstances of the case, that appellant failed to provide meritorious reasons to discharge his counsel. The trial judge informed appellant that he could proceed *pro se.* In compliance with Md. Rule 4–215(a), the trial judge asked appellant if he had received a copy of the charging document, to which appellant

replied "yes." The trial judge advised appellant of his right to counsel and the assistance an attorney could provide, explaining that an attorney can assist in filing motions, preparing for trial, selecting a jury, making opening and closing statements, and making objections during trial. The trial judge explained the nature and maximum penalties of the charges against appellant. After the advisement, the trial judge asked if appellant wanted to proceed *pro se.* Appellant declined stating: "I understand what you just said, and I can't possibly represent myself." The trial judge then proceeded with the trial. The trial judge properly followed the requirements of Md. Rule 4–215(a)(1–4) and (e) and the relevant case law stated above. We perceive no error.

### III.

Appellant contends that the "trial court erred in failing to respond to the jury's note and in failing to timely inform counsel of the note." Appellant argues that when a jury poses a question regarding a central issue in the case, a trial judge must respond to and address the issue. Appellant argues that the jury requested an "arrest report" and that the request may have referred to a report admitted into evidence, containing a description of the robber that is inconsistent with appellant's appearance at the time of arrest. Appellant contends that because the circuit court at no point sought to determine what document the jury referred to in the note, and failed to respond to the jury note until the verdict was taken, the court committed reversible error.

The State responds that the "court should decline to address [appellant]'s unpreserved complaint regarding the trial court's response to a jury note." The State asserts that appellant failed to object to the court's handling of the jury note at trial, and the issue is not preserved for review. Alternatively, the State maintains that the circuit court properly notified the parties of the note.

In *Morton v. State,* 200 Md.App. 529, 537–38, 28 A.3d 98 (2011), with Judge Albert J. Matricciani, Jr. speaking, this

Court held that a defendant's failure to object to the handling of a jury note at trial resulted in forfeiture of appellate review of the issue. In *Morton*, an alternate juror submitted a jury note "to the bailiff sometime after Ms. Thompson, who had been sequestered, entered the courtroom to testify as the second of the prosecution's three witnesses in its case-in-chief." 200 Md.App. at 536, 28 A.3d 98. The note explained that "the alternate juror knew the individual who had come into the courtroom with Ms. Thompson because they worked together." *Id.* The circuit court did not address the jury note until after closing arguments and after the alternative juror was excused. *Id.* We held that the issue was not preserved for appeal, noting that "[w]hen the trial judge informed the attorneys about the excused juror's note, defense counsel did not object or otherwise comment on the judge's decision not to communicate with the remaining jurors regarding the note." *Id.* at 538, 28 A.3d 98.

Recently, in *Handy v. State*, 201 Md.App. 521, 526–27, 30 A.3d 197 (2011), this Court speaking through Judge Frederick J. Sharer, addressed whether the trial court violated Md. Rule 4–326 by failing to disclose notes from the jury before asking certain questions of a witness at trial. We held that the defendant's failure "to object to either the procedure of asking questions submitted by the jury, and by failing to object at any time when the court did ask such questions, [he] waived this issue." *Id.* at 546, 30 A.3d 197. We explained that:

> In accordance with Rule 8–131, ordinarily [the appellate court] will not consider any point or question not plainly raised or decided by the trial court. Further, the purposes of Rule 8–131 are:
>
> (a) to require counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings, and (b) to prevent the trial of cases in a piecemeal fashion, thus accelerating the termination of litigation.

Both the Court of Appeals and this Court have held that Md. Rule 4–326 [12] is subject to the rules of preservation. *Id.* at 544–45, 30 A.3d 197 (citations and internal quotations omitted).

In the case at hand, the court informed the State and appellant of the jury note at the time the verdict was taken. The jury had been excused for deliberations at 11:37 a.m. and returned to the courtroom at 1:08 p.m. with the verdict. Sometime within that ninety minute time span, the jury note was submitted to the circuit court. The jury note fails to indicate the time at which it was submitted, but does contain the date "10/7/10." The trial judge informed the State and appellant of the jury note at the time the verdict was to be taken, and of the court's intended response to the note. The trial judge also provided an explanation as to why he had not responded to the jury note during the ninety minute deliberations, stating that: "I was in another Court . . . handling other matters[.]" The trial judge inquired as to whether the State or appellant had any question and both responded "no." The trial judge then addressed the jury, giving the proposed response. Appellant failed to lodge any objection to the trial judge's handling of the jury note or to the response to the note. As such, we hold that this issue is not preserved for appeal. *See* Md. Rule 8–131; *Handy*, 201 Md.App. at 544–46, 30 A.3d 197.

## IV.

Appellant contends that "the verdict was defective because not all jurors responded when polled." Appellant argues that

---

12. Md. Rule 4–326, provides, in pertinent part, as follows:
 (d) Communications with jury. The court shall notify the defendant and the State's Attorney of the receipt of any communication from the jury pertaining to the action as promptly as practicable and in any event before responding to the communication. All such communications between the court and the jury shall be on the record in open court or shall be in writing and filed in the action. The clerk or the court shall note on a written communication the date and time it was received from the jury.

a criminal defendant has both a constitutional right to a unanimous jury verdict and the right to have all jurors individually polled to determine their agreement with the verdict. Appellant asserts that, when a defendant requests a polling of the jury, a hearkening does not cure a defective poll. Appellant asserts that he requested that the jury be polled and Juror Number Five did not respond audibly to the poll. Based on this, appellant contends that the polling was defective and the verdict was not unanimous.

Appellant contends that his attorney's failure to object to the "incomplete poll" does not constitute a knowing and intelligent waiver of his constitutional right to a unanimous jury verdict. Appellant urges this Court to utilize "plain error" review, because the error was compelling, extraordinary, exceptional, or fundamentally affected his ability to receive a fair trial.

In contrast, the State argues that we "should decline to address [appellant]'s unpreserved complaint that one of the jurors did not respond when polled." The State contends that appellant failed to object at trial and the issue is not preserved for review. Alternatively, the State argues that Maryland law simply requires unanimous concurrence of the jury, and not an affirmative verbal response from each juror recorded on the record during polling.

Md. Rule 4–327(e) provides:

On request of a party or on the court's own initiative, the jury shall be polled after it has returned a verdict and before it is discharged. If the sworn jurors do not unanimously concur in the verdict, the court may direct the jury to retire for further deliberation, or may discharge the jury if satisfied that a unanimous verdict cannot be reached.

Unanimity is required to finalize the verdict. *Jones v. State,* 384 Md. 669, 683–84, 866 A.2d 151 (2005). Unanimity is determined by polling the jury, if the defendant requests, or else unanimity is determined by hearkening. *Id.* at 684, 866 A.2d 151. "Whether a verdict satisfies the unanimous consent requirement is a question that ... is review[ed] *de novo,*

considering the totality of the circumstances." *Caldwell v. State,* 164 Md.App. 612, 643, 884 A.2d 199 (2005) ("Whether a verdict satisfies the unanimous consent requirement is a question that implicates the defendant's state constitutional right, as provided in Article 21 of the Declaration of Rights. Accordingly, the issue is a mixed question of law and fact, which we review *de novo,* considering the totality of the circumstances.").

 A defendant's right to a unanimous jury verdict may be waived, but only when a defendant receives consent from the State and court, and the defendant "competently and intelligently" waives the right. *State v. McKay,* 280 Md. 558, 572, 375 A.2d 228 (1977) (citation omitted). The right to an unanimous verdict, and the effect of polling and hearkening the jury has been examined extensively by the Court of Appeals and this Court.[13]

Over an extended period of time and in a number of different cases, Maryland appellate courts have addressed issues related to the polling and hearkening of juries. In *Givens v. State,* 76 Md. 485, 488, 25 A. 689 (1893), the Court of Appeals held that the trial court's failure to hearken the jury to its verdict was reversible error. The Court of Appeals stated: "[U]ntil the assent of the jury is expressed [by a hearkening], or by a poll, the jury has aright to retract, and that the verdict is not perfected until after the jury has expressed their assent in one of these ways." *Id.* at 487, 25 A. 689.

---

**13.** If during polling a verdict is not unanimous, the circuit court "must take corrective action, either by returning the jury to its room for further deliberations or by noncoercively attempting to clarify a juror's ambiguous response through questions." *Caldwell,* 164 Md.App. at 635, 884 A.2d 199. "[T]o satisfy the unanimous consent requirement, a verdict must be unambiguous and unconditional and must be final." *Id.* at 642–43, 884 A.2d 199; *Lattisaw v. State,* 329 Md. 339, 341, 346, 619 A.2d 548 (1993) (The Court of Appeals held that a verdict was ambiguous when a polled juror stated "[guilty], with reluctance."); *Bishop v. State,* 341 Md. 288, 289, 294, 670 A.2d 452 (1996) (The Court of Appeals held that a verdict was ambiguous when polled juror stated "uhh, reluctantly, [guilty.]").

In *Glickman v. State*, 190 Md. 516, 60 A.2d 216 (1948), *overruled in part by State v. Santiago*, 412 Md. 28, 985 A.2d 556 (2009), the defendant was convicted of assault and unlawfully and willfully hindering and obstructing the free passage of persons passing by and along a public street, although the jury reached a verdict as to both charges, the trial court failed to hearken the jury as to one of the verdicts. *Id.* at 518, 522–23, 60 A.2d 216. The Court of Appeals held, however, that appellant's objection to the verdict was waived inasmuch as the record disclosed that no objection was made to the verdict at trial. *Id.* at 526, 60 A.2d 216. ("The record discloses, as we have noted above, that the jury were never hearkened as to their verdict in No. 165. But the record also discloses that no objection was made to the verdict on this ground, and we must hold that such objection was waived."). The Court of Appeals explained that: "If error was committed by the trial court in receiving or entering the verdict, it was incumbent upon the accused, or his counsel, to raise the question by objection or motion in the trial court, and appeal for the court's ruling." *Id.* (citing *Conley v. Warden of the Md. House of Corr.*, 190 Md. 750, 59 A.2d 684 (1948)).

In *Smith v. State*, 299 Md. 158, 166, 472 A.2d 988 (1984), the Court of Appeals held a defendant is "entitled as a matter of right, to a poll of the jury, and he [may] not be convicted, except upon the concurrence of each juror.... It is in the absence of a demand for a poll that a hearkening is required for proper rendition of a verdict." (Citations omitted) (alterations in original).

Most recently, in *State v. Santiago*, 412 Md. 28, 33, 38, 985 A.2d 556 (2009), a case in which the jury was neither polled nor hearkened, the Court of Appeals reiterated that in a criminal case, if the jury is not polled, the court must hearken the verdict. The Court of Appeals held that: "Though polling may be waived, both polling and hearkening may not be waived in the same case." *Id.* at 32, 985 A.2d 556. In so holding, the Court of Appeals "expressly overrule[d] and disavow[ed] any language in *Glickman* that purports to hold that the failure to hearken the verdict in a criminal case may

be waived in the absence of polling the jury." *Id.* at 41, 985 A.2d 556. Accordingly, the Court of Appeals held that "the defect in this case [that the jury was not hearkened or polled] was not subject to waiver." *Id.* at 42, 985 A.2d 556.

In this case, appellant neither objected to the response or the lack of a response from Juror Number Five during the polling nor to the hearkening of the jury, and when hearkened, the jury was unanimous. The transcript indicates that an audible response for Juror Number Five was not recorded. Appellant did not object, however, or ask to clarify Juror Number Five's response. When the jury verdict was hearkened, and the hearkening was unanimous, appellant again failed to object or challenge the jury verdict.

"[T]he burden, as always, is upon the appellant who alleges error to convince us that error occurred. A part of that burden is the making of an adequate record." *Bailey v. State,* 84 Md.App. 323, 333, 579 A.2d 774 (1990) (quoting *Parker v. State,* 72 Md.App. 610, 617–18, 531 A.2d 1313 (1987)) (footnote omitted). Following the principles set forth in the authorities discussed above, given that appellant failed to object to the response or the inaudibility of the response from Juror Number Five during polling and the verdict was hearkened with unanimity, we conclude that appellant has not·preserved any issue as to Juror Number Five's inaudible response for appellate review.

### *Plain Error*

In *Boulden v. State,* 414 Md. 284, 313, 995 A.2d 268 (2010), the Court of Appeals stated:

> We decline to review the claimed error under a "plain error" analysis. "Such review is reserved for those errors that are 'compelling, extraordinary, exceptional or fundamental to assure the defendant of [a] fair trial.'" *Robinson* [*v. State* ], 410 Md. [91] at 111, 976 A.2d [1072] at 1084 [ (2009) ] (quoting *Rubin v. State,* 325 Md. 552, 588, 602 A.2d 677, 694 (1992)). We explained further in *Robinson* that

[w]e will intervene in those circumstances only when the error complained of was so material to the rights of the accused as to amount to the kind of prejudice which precluded an impartial trial. In that regard, we review the materiality of the error in the context in which it arose, giving due regard to whether the error was purely technical, the product of conscious design or trial tactics or the result of bald inattention.

(Alterations in original). "Consequently, appellate review under the plain error doctrine ' 1) always has been, 2) still is, and 3) will continue to be a rare, rare phenomenon.'" *Hicks v. State*, 189 Md.App. 112, 130, 984 A.2d 246 (2009) (citations omitted).

In the present case, we decline to employ plain error review. Although Juror Number Five's response was recorded as "inaudible" at trial, neither the court, the State, nor defense counsel took action that belied doubt of an affirmative response by Juror Number Five to polling. At no point did Juror Number Five contend that the final verdict differed from the juror's verdict. Most importantly, the jury hearkening was unanimous. Under these circumstances we decline to exercise plain error review.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**